Land, Log & Lumber Co. and others vs. McIntyre.

---

LAND, LOG & LUMBER COMPANY and others, Respondents, vs. McIntyre, imp., Appellant.

*May 26 — June 23, 1898.*

*Counties: Liability of supervisor for auditing illegal claims:* Quasi-*judicial acts.*

1. Although a member of a county board of supervisors is exempt from liability to the corporation on account of his action as a member of the auditing board, by reason of the *quasi*-judicial nature of the duties devolving on that body, such exemption does not apply where the subject matter acted upon was outside its jurisdiction, such as claims in which the member had a pecuniary interest; claims for work and materials furnished for objects not within the power of the board; claims allowed to officers in excess of the compensation fixed by law and in direct violation of the statute; claims for work and materials corruptly contracted for by the member and his associates; claims which the board were prohibited from auditing because not properly made out, verified, and filed; and claims for indebtedness contracted in excess of the constitutional limitation. Such exemption applies, however, in respect to claims which the board were authorized to audit, though in excess of the tax levy, the issuing of orders thereon being what is prohibited by the statute.

2. Although the auditing of claims in excess of the constitutional limit-
ation of indebtedness, and the issuing of orders in advance of the
tax levy, were outside of the jurisdiction of the auditing board, yet,
where a tax levy has been made and the claims paid, so far as they
were for legitimate county expenses the county has no claim
against a supervisor by reason of his illegal acts.

APPEAL from an order of the circuit court for Vilas county:
W. F. BAILEY, Judge. *Affirmed*.

Action against *F. W. McIntyre* and P. J. O'Malley, mem-
bers of the county board of Vilas county from April, 1894,
to April, 1895, *McIntyre* being chairman of the board, to
compel them to account and pay over to such county, for its
use, moneys alleged to have been, through fraudulent and
illegal practices, squandered, misapplied, and converted to
their own use. The county is joined as a defendant, and the
complaint contains the usual allegations of a demand on the
county board to prosecute for the wrongs complained of, a
refusal to comply with such demand, that plaintiffs are tax-
payers of the county, and that they sue in behalf of them-
selves and all other such taxpayers. The complaint further
sets forth all the necessary formal allegations, and, in effect,
that said *McIntyre* and O'Malley, while members of the
county board of Vilas county, as such members entered into
contracts, incurred indebtedness thereon, audited bills for
claims for the payment of such indebtedness, and issued
county orders to cover such claims, specifying the same in
considerable detail, in excess of all available county funds
and tax levies for the year; also that, conspiring together
to defraud the county, they corruptly appropriated money
to themselves and drew the same from the county treasury;
that they obtained other money from the county by means
of furnishing labor and material at an exorbitant price in and
about the building of a pretended county road that had no
existence in fact, of which they had full knowledge, auditing
bills for such labor and material, issuing orders thereon to
themselves, and obtaining pay thereon; that they corruptly

audited other bills and issued county orders thereon for the construction of such pretended highway, which orders were paid, specifying the amount, and that such orders were issued to the extent of many thousands of dollars in excess of the constitutional limitation of indebtedness, specifying the amount of such excess; that they audited bills for their own private expenses in a particular case, specifying the facts in that regard, and knowingly audited bills in favor of other officers in excess of the amount allowed by law, by means of which money was drawn from the treasury to pay such bills; and corruptly, by other ways and means stated, caused money to be drawn from the county treasury on illegal and fraudulent claims. The prayer for relief is for an accounting, and that defendants *McIntyre* and O'Malley be compelled to pay to the county, for its use, the money corruptly obtained by them, or through their corrupt practices, from the treasury of the county, and lost. The complaint further shows that the terms of offices of the alleged unfaithful officials expired before the action was commenced.

The complaint was demurred to generally, which demurrer was overruled and an order entered accordingly, from which this appeal was taken.

For the appellant there was a brief by *D. E. Riordan* and *Ryan, Hurley & Jones*, a brief in reply by *Ryan, Hurley & Jones*, and the cause was argued orally by *T. C. Ryan*. They contended, *inter alia*, that no civil action lies against a judicial officer, or an officer or person acting in a judicial capacity, for the careless, improper, or erroneous performance of his judicial duties. *Fath v. Koeppel*, 72 Wis. 289; *Wall v. Trumbull*, 16 Mich. 228; *Hunter v. Mobley*, 26 S. C. 192; *State ex rel. Reynolds v. Comm'rs of Tippecanoe Co.* 45 Ind. 501; *Hannon v. Grizzard*, 99 N. C. 161. Nor does it change the rule if it be alleged that the decision was made corruptly. *Steele v. Dunham*, 26 Wis. 393; *Jones v. Brown*, 54 Iowa, 74; *Stewart v. Cooley*, 23 Minn. 347.

Land, Log & Lumber Co. and others vs. McIntyre.

For the respondents there was a brief by *John Barnes* and *Curtis, Reid & Smith*, and oral argument by *Mr. Barnes.* To the point that it is only when a municipal boards acts within the scope of its authority in allowing bills that its acts will be considered *quasi*-judicial, they cited *Board of Sup'rs of Richmond Co. v. Ellis*, 59 N. Y. 620, and cases cited; *State v. Hastings*, 37 Neb. 96; *McCracken v. Soucy*, 29 Ill. App. 619; *Blair v. Lantry*, 21 Neb. 247; *Tweed's Case*, 16 Wall. 504; *People v. Ingersoll*, 58 N. Y. 1; *People v. Fields*, id. 491; *Lincoln v. Chapin*, 132 Mass. 470.

MARSHALL, J.   Most of the questions presented on this appeal are ruled against appellant in *Land, Log & Lumber Co. v. McIntyre, ante,* p. 245, and so far, reference to what is there said is sufficient.

The sole cause of action stated in the complaint is for a recovery, from appellant and his associate O'Malley, of money for the use of the county, which they, while managing its affairs as members of its board of supervisors, are alleged to have fraudulently misapplied, misappropriated, or lost.   That such conduct on the part of the managing officers of a corporation, whether public or private, renders them personally liable for the injury to such corporation, is familiar and not challenged by appellant.   Reference for authority on the subject may be had to Beach, Pub. Corp. § 197; Dillon, Mun. Corp. § 910, and cases there cited; *Boston v. Simmons*, 150 Mass. 461; *Gores v. Day*, 99 Wis. 276; *People v. Tweed*, 63 N. Y. 194.

The chief objection to the complaint, not covered by the decision in the other case against appellant, referred to, is that all the alleged illegal expenditures were made on orders issued pursuant to bills audited by the board, and that their conduct in auditing such bills cannot be called in question, even though corrupt.   The duties of auditing boards are generally held to be *quasi*-judicial.   Beach, Pub. Corp. § 857.

The statutes of this state on the subject (secs. 676–683, R. S. 1878), prescribing the procedure in the making, filing, and auditing of claims, leave little if any room for doubt as to the precise nature of the duties of the board in investigating and passing thereon. Such sections provide that claims shall be made out in writing, be itemized, verified by affidavit, and filed with the county clerk, and prohibit the board from considering or acting on any claim until so made out, verified, and filed. They also provide that the board may take testimony, if deemed necessary to determine the truth of the statements contained in any claim; and further, that their decision on any claim shall be a bar to any action thereon other than by appeal from such decision to the court within ninety days. The nature of these proceedings, it will be observed, from beginning to end, quite resembles judicial proceedings. The final determination or decision of the board, unless appealed from, has all the conclusiveness of a judgment upon the rights of the parties, and it follows logically that the duties of the board, as a board of audit, are *quasi*-judicial, and that, within their jurisdiction, they are not liable either for mistakes, errors of judgment, or corrupt conduct. The law has been long settled that way upon considerations of public policy deemed sufficient to warrant it. As said, in effect, by this court, in *Steele v. Dunham*, 26 Wis. 393, such rule applies to all officers in the performance of judicial or *quasi*-judicial duties, to judges from the highest to the lowest, to jurors, and to all public officers whatever name they may bear; and further, in substance, that if it were otherwise, officers, however conscientious and correct in their official life, would be constantly in danger of having their actions challenged in court by disappointed persons, and that independence necessary to the judicial function seriously interfered with. To avoid that danger, judicial officers, high or low, such officers strictly so called and those *quasi*-judicial as well, and all in the performance of duties of a judicial nat-

Land, Log & Lumber Co. and others vs. McIntyre.

ure, within their jurisdiction, have complete immunity from actions for damages on account of their official acts.

This rule was stated in *Wilson v. New York*, 1 Denio, 595, by BEARDSLEY, C. J., which is often referred to by courts and text writers, in substance thus: No action lies in any case for misconduct or delinquency, however gross, in the performance of judicial duties, and although the officer may not in strictness be a judge, still, if his powers are discretionary, to be exerted or withheld according to his view of what is necessary and proper, they are in their nature judicial, and he is exempt from all responsibility by action for the motives which influence him, and the manner in which such duties are performed; if corrupt he may be impeached or removed, but the law will not tolerate an action to redress any individual wrong which may be done. But such immunity from liability, incident to the judicial function, goes no further than the result of the judicial act; so if a member of an auditing board, in passing on a claim which such board has a right to audit, acts negligently or corruptly, for that alone there is no liability; but if the mischief goes back further, and there is fraud in contracting the indebtedness itself, either because not authorized by law, although for some legitimate public purpose, or intentionally excessive or fraudulently contracted from any other cause, liability attaches from the first act of infidelity to the public trust, if actual damage flows therefrom. The mere auditing of the claim in such a case is but a step in the scheme of fraudulently plundering the public treasury, and behind it the unfaithful officer cannot successfully hide and rely on his judicial character for protection. If such were not the case, members of auditing boards of public corporations, who are also the managers of the general corporate business, as in case of a county, town, or village board, or city council, might easily fraudulently empty the public treasury by corruptly auditing claims based on previously incurred fraudulent in-

debtedness with which they were culpably connected, and defy prosecution for the public injury because the final act, consummating the fraud, was in form judicial. No such wide open door for the escape of dishonest officials exists. In the celebrated case of *People v. Tweed*, 63 N. Y. 194, every possible avenue of escape was sought by the eminent counsel for the members of the board of audit of the county of New York, who had systematically plundered its treasury by auditing fraudulent claims which such board were instrumental in creating, yet it does not appear to have occurred to such counsel that the judicial act of auditing such claims could be set up as a defense to the action to compel restoration of the public money dishonestly appropriated and lost.

From the foregoing, though it must be conceded that no action lies against appellant for damages to the corporation growing out of his action as a member of the auditing board, as to claims the board had a right to audit, that does not apply where the subject matter acted upon was outside its jurisdiction, such as claims in which the appellant had a pecuniary interest, they being excluded according to the most familiar principles (12 Am. & Eng. Ency. of Law, 46, 47); claims for work and material furnished for objects not within the power of the board, such as the construction of a pretended county road having no legal existence; claims allowed to officers in excess of the legal compensation provided by law and in direct violation of the statute on the subject; claims for work and material corruptly contracted for by appellant and his associate; claims which the board were prohibited from considering because not properly made out, verified, and filed; and claims for indebtedness contracted in excess of the constitutional limitation; but does apply to claims which the board were authorized to audit, though in excess of taxes levied, the issuing of orders on such claims being what is prohibited by statute, not the incurring of indebtedness or the auditing of claims therefor.

It follows from what has preceded, and what was decided in the other case against appellant, to which we have referred, that on the facts alleged he is liable to account in this action for money appropriated to himself and associate, O'Malley, to expend in the improvement of roads and converted to their own use, money paid for work and labor on roads that had no legal existence, money paid out to appellant and his associate for material furnished by them to the county, money paid for fraudulent or excessive charges pursuant to a previously formed fraudulent scheme to thus obtain county money for the use of appellant and his associate or others, money paid officers for their private expenses, and losses, if any, through auditing claims not filed in the manner provided by law.    It is considered that though the auditing of claims for indebtedness in excess of the constitutional limitation was outside the jurisdiction of the auditing board, inasmuch as a tax levy appears by the complaint to have been made and the claims paid, so far as they were for legitimate county expenses the county has no claim against the appellant; and the same is true of the issue of county orders in advance of the tax levy.    This is said in order to furnish to the trial court a complete guide for further proceedings in the case.

There are a multitude of matters alleged upon which an account is demanded, some of which are alleged so generally that we cannot readily refer to them particularly.    Enough has been said to enable the trial court to dispose of the case without further difficulty.

*By the Court.*— The order of the circuit court is affirmed.

BARDEEN, J., took no part.