LISTER, and others, Appellants, v. BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM and another, Respondents.

*No. 650 (1974). Argued March 3, 1976.—Decided April 12, 1976.*
(Also reported in 240 N. W. 2d 610.)

284

For the appellants there was a brief by *Daniel W. Hildebrand* and *Ross, Stevens, Pick & Ross, S. C.* of Madison, and oral argument by *Mr. Hildebrand.*

For the respondents the cause was argued by *LeRoy L. Dalton,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, J. The plaintiffs, four former University of Wisconsin law school students, seek to recover the difference between nonresident and resident tuition paid for the 1970–1971 and 1971–1972 school years. The Board of Regents of the University of Wisconsin System and Thomas Hoover, the Registrar of the University of Wisconsin, Madison campus, are named defendants.

The plaintiffs commenced an action for an injunction, declaratory relief, and damages in the United States District Court for the Western District of Wisconsin in October, 1971. The complaint in that action alleged that sec. 36.16, Stats. 1969, which set forth the standards for determining resident status, violated the federal Constitution as applied to them. On July 11, 1973, the district court granted the defendants' motion to stay the proceedings pending a state court determination of the construction to be given sec. 36.16. The district court was of the opinion that the constitutional issues raised by the plaintiffs could be "substantially altered or obviated altogether" if the ambiguities concerning the construction and application of sec. 36.16 were resolved in the plaintiffs' favor. The court then invoked the federal abstention doctrine and retained jurisdiction "pending the resolution in the Wisconsin state courts of the issues of state law presented."

The plaintiffs then commenced this action for declaratory judgment and damages in the circuit court for Dane county. In the amended complaint it is alleged that the plaintiffs, while students of the University of Wisconsin Law School, applied for and were denied resident status and that each of them has satisfied the criterion set forth in sec. 36.16, Stats., to be classified as a resident student. At the time in question, the tuition fees for a resident student were approximately $305 per semester, and for nonresidents about $770 to $780. The plaintiff Lister claims to have overpaid $1,551 because of his nonresident status; the plaintiff Cooney $3,091; the plaintiff Thiel $770; and the plaintiff Turley $1,551. These amounts

are claimed to have been unlawfully collected because of an improper construction of sec. 36.16 and that the defendants exceeded their authority and power. The plaintiffs also allege the defendant Hoover is personally liable because he directly participated in the improper classification process.

The complaint contains a prayer for a judgment pursuant to sec. 269.56, Stats., declaring the plaintiffs' rights to have been classified as residents for tuition purposes under sec. 36.16; for such supplemental relief as may be necessary and proper pursuant to sec. 269.56 (8); and for the amounts of nonresident tuition collected from each plaintiff.

The defendants demurred to the complaint on the ground that, as to the request for declaratory relief, there was no presently existing justiciable controversy. As to the request for a money judgment, the defendants demurred on the ground that the plaintiffs had "not followed the dictates of sec. 285.01, Stats., regarding an action for debt against a state agency." The trial court sustained the demurrer and dismissed the amended complaint. The plaintiffs have appealed from that decision.

The gravamen of the complaint in this action commenced in the circuit court for Dane county and upon appeal here is that the plaintiffs were improperly classified as nonresidents for tuition purposes while students at the University of Wisconsin Law School during the 1970–1971 and 1971–1972 school years. The allegations of the complaint raise several questions concerning the proper construction and application of sec. 36.16, Stats. 1969. The provisions of that statute provided for the determination of student status for tuition purposes at the time this dispute arose. It has since been repealed and reenacted in an amended form pursuant to ch. 335, Laws of 1973. *See:* sec. 36.27, Stats. 1973.

The plaintiffs allege that the defendants misconstrued and misapplied sec. 36.16, Stats., in classifying them as nonresidents, thereby exceeding their authority under

that statute.[1] Based upon these allegations, the plaintiffs seek the following relief: (1) A declaration that they should have been classified as residents for tuition purposes and appropriate supplemental relief pursuant to sec. 269.56; (2) a judgment ordering the defendant Board of Regents to refund amounts alleged to have been unlawfully collected as nonresident tuition; and (3) a judgment imposing personal liability for those amounts on the defendant Hoover.

In sustaining the demurrer the circuit court held that the claims for monetary relief were barred by principles of state sovereign immunity. The claim for declaratory relief was dismissed on the ground that such a declaration would not terminate the controversy. The broad question on this appeal is whether the circuit court erred in sustaining the demurrer and dismissing the complaint.

The plaintiffs seek a refund of the amounts which they allege were unlawfully collected as nonresident tuition. The defendants demurred to this claim on the ground that "the court lacks jurisdiction over the subject matter in that the plaintiffs have not followed the dictates of sec. 285.01, Stats., regarding an action for debt against a state agency." The circuit court characterized the plaintiffs' claim as one for "money had and received" and held that the state had not consented to be sued on such claims unless the conditions contained in sec. 285.01, had been complied with. That section provides:

"**Actions against state; bond.** Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service as provided in s. 262.06 (3) and by filing with the clerk of court a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that he will indemnify the state against all costs

---

[1] The plaintiffs state they have raised federal constitutional objections to the statute in the federal court but do not reassert them in this action and ask only for a construction of the statute with federal constitutional questions to be resolved in the still pending federal action.

that may accrue in such action and pay to the clerk of court all costs, in case he fails to obtain judgment against the state."

It did not appear from the complaint that the plaintiffs had presented their claims to the legislature and been refused, therefore the circuit court concluded that the doctrine of sovereign immunity precluded recovery.

The plaintiffs contend, initially, that sec. 285.01, Stats., and the accompanying principles of sovereign immunity have no application to their claim for a refund of nonresident tuition.

The concept of sovereign immunity in this state derives from art. IV, sec. 27 of the Wisconsin Constitution, which provides:

"The legislature shall direct by law in what manner and in what courts suits may be brought against the state."

From this provision the rule developed that the state cannot be sued without its consent.[2] This immunity is procedural in nature and, if properly raised, deprives the court of personal jurisdiction over the state.[3]

The principal question raised by an objection based on the state's sovereign immunity is whether the action, in fact, constitutes a "suit against the state." It has been said that the state's immunity from suit extends to its arms or agencies.[4]

Are the defendants in this action, the Board of Regents and one of its employees, "agents" of the state? The determination of whether an action is really one

[2] *See: State ex rel. Martin v. Reis* (1939), 230 Wis. 683, 685, 284 N. W. 580; *Konrad v. State* (1958), 4 Wis. 2d 532, 538, 91 N. W. 2d 203; *Metzger v. Department of Taxation* (1967), 35 Wis. 2d 119, 131, 150 N. W. 2d 431.

[3] *Kenosha v. State* (1967), 35 Wis. 2d 317, 327, 328, 151 N. W. 2d 36; *Cords v. State* (1974), 62 Wis. 2d 42, 46, 214 N. W. 2d 405.

[4] *Sullivan v. Board of Regents of Normal Schools* (1932), 209 Wis. 242, 244, 244 N. W. 563.

against the state cannot be made solely by reference to the nominal parties to the action. The fact that the state is not named as a party defendant does not conclusively establish that the suit is not one against the state. Whether the defense of sovereign immunity may be asserted depends not so much upon the character of the parties defendant as it does upon the nature of the relief which is sought.[5]

When an action "is in essence one for the recovery of money from a state, the state is the real substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."[6] The question thus presented is whether a judgment for the plaintiffs on their claims for a refund would require payment from state funds. *Sullivan v. Board of Regents of Normal Schools, supra,* requires an affirmative answer.

In that case a teacher sought to recover a money judgment for the balance alleged due on a teacher's contract and for the reasonable value of services as a manager of the cafeteria at a state normal school. A demurrer was interposed on the ground of sovereign immunity. The Board of Regents appealed from an order overruling the demurrer. In its decision this court recognized the principle that the state can waive its sovereign immunity from suit when it creates an agency with independent proprietary powers and functions. There is no immunity from suit wth respect to the activities of such an agency.[7]

However, the court held that the Board of Regents was not such an "independent going concern." The statutory

---

[5] *See:* 81 C. J. S., *States,* p. 1311, sec. 216.

[6] *See:* 72 Am. Jur. 2d, *States, Territories, and Dependencies,* p. 500, sec. 112.

[7] *See: Majerus v. Milwaukee County* (1968), 39 Wis. 2d 311, 159 N. W. 2d 86; *Townsend v. Wisconsin Desert Horse Asso.* (1969), 42 Wis. 2d 414, 423, 167 N. W. 2d 425.

powers of the board in that case demonstrated that it was merely an administrative body with none of the attributes of a municipal or quasi-municipal corporation. The board had no power to raise money or incur liability beyond the amount appropriated by the legislature. The board could not dispose of property without express authority from the state. Most importantly, all funds belonging to the board were in the custody of the state treasurer.

When the acts which gave rise to this lawsuit occurred, the Board of Regents had the powers set forth in ch. 36, Stats. 1969. Under the provisions of that chapter the board was not empowered to incur any debt and the state treasurer was to have charge of "all moneys belonging to the university or in any wise appropriated by law to its endowment or support." Sec. 36.03 (3), Stats. 1969. In addition, the treasurer was to pay moneys out "only upon the warrant of the department of administration as provided by law." It is clear from these provisions that at the time this dispute arose with respect to financial matters, the Board of Regents enjoyed no more autonomy than it did at the time *Sullivan, supra,* was decided. A judgment in plaintiffs' favor on their claims for a refund would require payment of moneys in the hands of the state treasurer over which the Board of Regents has no independent control. To this extent the plaintiffs' action constituted a suit against the state and was therefore subject to the defense of sovereign immunity.

The plaintiffs nevertheless raise several arguments in support of the proposition that the state has waived or should be estopped to assert the immunity defense under the circumstances of this case. They first point to a document in the record entitled "University Committee on Appeals from Nonresident Tuition—Appeal Procedures and Information." That document provides in part:

"The Committee on Appeals from nonresident tuition is established to review the administrative determinations by the Registrars in cases where an Appellant believes the residency decision is erroneous; fails to take into consideration important extenuating or mitigating circumstances; or that the law exercises such severe hardship in his particular case that equity demands some relief from its operation.

"The Committee constitutes the final appellate body within the University system. Any relief beyond that granted by the Committee must be sought through the Courts."

The plaintiffs contend that as a result of the position taken in the document the defendants should now be estopped to assert that the wrong procedures have been followed.

As a general rule the legislature is the proper body to authorize suits against the state. An agency or officer of the state may not waive the state's immunity from suit unless specifically authorized to do so.[8] Since the statutory provisions granting certain powers to the Board of Regents contain no such authorization, the plaintiffs' reliance on the document is misplaced. In addition, it appears that the principle of estoppel will not be applied to deprive a state of its sovereign rights.[9]

The plaintiffs next contend that the defendants' participation in the federal court proceedings constitutes a waiver of sovereign immunity for the purposes of this action. The plaintiffs assert that the defendants expressly consented to an action in state courts by their motion for a stay in the federal action. They further argue that the complaint in the federal action requested the same damages as are sought by the complaint in this action and that the defendants' "motion would not have been

---

[8] 72 Am. Jur. 2d, *States, Territories and Dependencies*, p. 510, sec. 119.

[9] *See:* Annot., *Applicability of doctrine of estoppel against government agencies*, 1 A. L. R. 2d 338, 344, sec. 5.

granted if the federal court believed that the state courts would not have been able to grant complete relief."

It is our opinion that the defendants' participation in the federal proceeding could not constitute a waiver of the state's immunity from suit on the claim for a refund of tuition. The federal court action was based upon an alleged denial of constitutional rights and sought damages pursuant to the provisions of 42 USCA, sec. 1983. That section authorizes an action in federal court against "persons" who, under color of state law, deprive individuals of the rights, privileges or immunities secured by the federal constitution. A number of federal courts have held that state agencies and governmental units are not "persons" for the purposes of damage suits under that section.[10] Section 1983 does not authorize the recovery of damages where the amount sought to be recovered would be paid, not by individual state officers, but from state funds.[11] We do not believe the plaintiffs are correct in their assertion that the federal court could order the state to refund the nonresident tuition in an action under sec. 1983.

The plaintiffs rely on *State ex rel. Reynolds v. Smith* (1963), 19 Wis. 2d 577, 120 N. W. 2d 664, for the proposition that the "litigation posture assumed by the state officials in federal court resulted in a waiver" of the immunity defense in this action. In that case the state

[10] *See: Prostrollo v. University of South Dakota* (8th Cir. 1974), 507 Fed. 2d 775, certiorari denied (1975), 421 U. S. 952, 95 Sup. Ct. 1687, 44 L. Ed. 2d 106; *Patton v. Conrad Area School District* (D. C. Del. 1975), 388 Fed. Supp. 410; *Brooks v. Nez Perce County* (D. C. Idaho 1975), 394 Fed. Supp. 869; *Moye v. City of Raleigh* (4th Cir. 1974), 503 Fed. 2d 631; *Hampton v. City of Chicago, Cook County, Illinois* (7th Cir. 1973), 484 Fed. 2d 602, certiorari denied, 415 U. S. 917, 94 Sup. Ct. 1413, 39 L. Ed. 2d 471.

[11] *See: Monell v. Dept. of Social Services of City of New York* (S. D. N. Y. 1975), 394 Fed. Supp. 853; *Frye v. Lukehard* (W. D. Va. 1973), 364 Fed. Supp. 1379.

attorney general sought a writ of mandamus to compel the state treasurer to sign a check payable to a federal district court as security for costs in a district court action. The treasurer argued that costs may not be taxed against the state in the absence of an authorizing statute. However, this court held that "when a state voluntarily enters the courts of another sovereign as a party plaintiff, it thereby waives its sovereign immunity and subjects itself to liability for costs in the same manner as any other litigant." The court determined that the attorney general was authorized by statute to bring the federal court action on behalf of the state and concluded that the state had therefore waived its immunity as to the imposition of costs in that action.

The *Smith Case* clearly does not support the plaintiff's position that failure to assert sovereign immunity in a federal court action involving a federal claim to relief constitutes a waiver of that immunity in a subsequent state court action involving a claim to relief under state law. The state's immunity from suit on the plaintiffs' claim to a refund cannot be waived by the participation of the Board of Regents in the federal action on a federal claim which itself does not authorize the recovery of a money judgment against the state.

The plaintiffs also contend that the defendants did not properly raise the immunity defense by their demurrer. This court has held that sovereign immunity is a matter of personal jurisdiction which may be waived. *See: Kenosha v. State* (1967), 35 Wis. 2d 317, 327, 328, 151 N. W. 2d 36; *Cords v. State* (1974), 62 Wis. 2d 42, 46, 214 N. W. 2d 405. The plaintiffs argue that the defendants' reference to subject-matter jurisdiction in their demurrer is fatal.

We believe that the defendants effectively, if inartfully, raised the sovereign immunity defense. In *Kenosha*

*v. State, supra,* this court, in holding that a waiver of the immunity defense had occurred, stated at page 328:

"In the secretary of state's demurrer, no objection was made to the personal jurisdiction of the court, nor was any mention of sovereign immunity made."

The court in that case held only that a demurrer on the ground that the complaint failed to state a cause of action was ineffective to raise the objection to the court's personal jurisdiction. The circuit court correctly analyzed the waiver question in this case:

"In their Demurrer, the Regents mistakenly characterized their objection as going to the subject matter jurisdiction of the court. But by citing Sec. 285.01, the defendants raised the defense of sovereign immunity sufficiently to avoid waiving it. There could be no doubt that the defendants were demurring on a sovereign immunity basis, nor any possibility of surprise or prejudice to the plaintiffs arising from the wording of the Demurrer. The briefs of both sides fully argued the sovereign immunity theory."

The circuit court correctly characterized the plaintiffs' claim for a refund of tuition as in the nature of one for money had and received. In *Trempealeau County v. State* (1952), 260 Wis. 602, 51 N. W. 2d 499, this court held that claims for money had and received were within the purview of sec. 285.01, Stats. That section constitutes a consent by the state to be sued on such claims but only after the claim has first been presented to and refused by the legislative claims committee. Where the state has consented to suit upon certain conditions, compliance with those conditions is jurisdictional and a suit may not be maintained against the state in the absence of such compliance. Because the sovereign immunity defense was available and sufficiently raised, the circuit court had no personal jurisdiction over the state and properly dismissed the plaintiff's claim for refund.

The plaintiffs also seek to hold the defendant Hoover personally liable for the amounts of nonresident tuition alleged to have been unlawfully collected. In holding that the plaintiffs could not recover on this claim, the circuit court stated: "A state officer acting in his official capacity ordinarily may not be held personally liable for his official acts, as he partakes in the immunity granted the State by Sec. 27, Art. IV of the Wisconsin Constitution." The court went on to state that individual liability on behalf of a public employee exists only where he has failed to properly perform a "ministerial" duty. The court concluded that Hoover's duties with respect to determining residency status under sec. 36.16, Stats., required the exercise of discretion and judgment and were not merely ministerial in nature.

The plaintiffs contend that the question of Hoover's individual immunity was not raised by the demurrer and, therefore, was not properly considered by the trial court. The ground of the defendants' demurrer to the plaintiffs' monetary claims was that the conditions set forth in sec. 285.01, Stats., had not been complied with "regarding an action for debt against a state agency." We have concluded the demurrer properly raised an objection to the court's personal jurisdiction over the state with respect to the claim for a refund of tuition. An objection based upon the state's sovereign immunity from suit does not necessarily raise the question of a public officer's immunity from personal liability for damages.

The doctrine of sovereign immunity and the principle which extends an immunity to public officers from civil liability for damages are two separate and distinct concepts.[12] As noted above, the state's sovereign immunity

[12] *See: Cords v. Ehly* (1974), 62 Wis. 2d 31, 214 N. W. 2d 432; *Smith v. Cooper* (1970), 256 Or. 485, 494, 475 Pac. 2d 78, 45 A. L. R. 3d 857; *Donahue v. Bowers* (Or. App. 1974), 526 Pac. 2d 616.

from suit is procedural in nature and arises from the state constitution. The immunity afforded public officers with respect to the performance of their official functions, on the other hand, is a substantive limitation on their personal liability for damages and is common law. It does not derive, as the language in some cases would imply, from the state's sovereign immunity under art. IV, sec. 27 of the Wisconsin Constitution, but from considerations of public policy.[13] These considerations have been variously identified in the cases as follows: (1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office.

Because an objection based on the state's sovereign immunity is effective only as to "suits against the state," it cannot appropriately be asserted in response to a claim seeking to hold a public officer personally liable for damages. The objection of an officer's civil immunity, affecting as it does his substantive liability for damages, is properly presented by a demurrer on the ground that the complaint fails to state a cause of action.[14] No demurrer on that ground was interposed in this case.

Ordinarily a demurrant is required to distinctly specify the grounds of objection in his demurrer and his failure

[13] *See: Bromund v. Holt* (1964), 24 Wis. 2d 336, 129 N. W. 2d 149; 3 Davis, *Administrative Law Treatise,* sec. 26.01; Prosser, *Law of Torts* (4th ed.), pp. 987–992, sec. 132 (hornbook series).
[14] *See: Wasserman v. Kenosha* (1935), 217 Wis. 223, 258 N. W. 857.

to do so waives the objection.[15] However, the purpose of pleading requirements is to formulate issues and to give the other party notice of the issues sought to be raised.[16] The record in this case reveals that the circuit court and both parties below proceeded upon the assumption that the defendants' objection based on the state's sovereign immunity also raised the question of Hoover's civil immunity. The plaintiffs appear to have fully briefed the issue below and under these circumstances should not now be heard to contend that the procedure employed was erroneous.

The plaintiffs also contend, however, that the circuit court erred in concluding that Hoover was immune from personal liability under the circumstances of this case. They argue that his duties under sec. 36.16, Stats., relating to the classification of students for tuition purposes were ministerial in nature and that he is therefore personally liable for damages resulting from the erroneous performance thereof.

The general rule is that a public officer is not personally liable to one injured as a result of an act performed within the scope of his official authority and in the line of his official duty.[17] The various exceptions to this rule are determined by a judicial balancing of the need of public officers to perform their functions freely against the right of an aggrieved party to seek redress.

The most generally recognized exception to the rule of immunity is that an officer is liable for damages resulting from his negligent performance of a purely minis-

---

[15] Secs. 269.09 and 263.12, Stats.; *Theuerkauf v. Schnellbaecher* (1974), 64 Wis. 2d 79, 218 N. W. 2d 295; *Becker v. Becker* (1972), 56 Wis. 2d 369, 202 N. W. 2d 688.

[16] *Schneck v. Mutual Service Casualty Ins. Co.* (1963), 18 Wis. 2d 566, 119 N. W. 2d 342; *Aldrich v. Skycoach Air Lines Agency* (1954), 266 Wis. 580, 64 N. W. 2d 199.

[17] *See:* 63 Am. Jur. 2d, *Public Officers and Employees*, p. 798, sec. 288.

terial duty.[18] A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.[19]

As the circuit court noted, sec. 36.16, Stats., under which Hoover acted, required the exercise of some discretion and judgment in making the determination of who is and who is not entitled to resident status for tuition purposes. Section 36.16 (1) (a) provided that "a bona fide resident of the state for one year next preceding the beginning of any semester for which such student registers at the university . . . shall while he continues a resident of the state be entitled to exemption from nonresident tuition." Under sec. 36.16 (3), in determining bona fide residence, several activities of the student "shall be considered." However, a student from another state who was in this state "principally to obtain an education" was not to be considered to have established a residence in Wisconsin by virtue of attendance at educational institutions. The statute did not prescribe the classification process with such certainty that nothing remained for the administrative officer's judgment and discretion.

Beyond the question of liability for the negligent performance of purely ministerial duties, the most generally favored principle is that public officers are immune from liability for damages resulting from their negligence or unintentional fault in the performance of discretionary functions. Otherwise stated, there is no substantive liability for damages resulting from mistakes in judg-

[18] See: Meyer v. Carman, (1955), 271 Wis. 329, 73 N. W. 2d 514; Chart v. Dvorak (1973), 57 Wis. 2d 92, 203 N. W. 2d 673; Cords v. Ehly, supra, footnote 12.

[19] Meyer v. Carman, supra, footnote 18; Clausen v. Eckstein (1959), 7 Wis. 2d 409, 97 N. W. 2d 201.

ment where the officer is specifically empowered to exercise such judgment.[20] It must be conceded that an officer charged with the administration and application of the standards set forth in sec. 36.16, Stats., could make mistakes in judgment which would result in an erroneous classification. However, at least in the absence of some malicious, wilful and intentional misconduct, the policy considerations underlying the immunity principle require that the officer be free from the threat of personal liability for damages resulting from mistakes of judgment. The complaint contains no allegation of malicious or intentional misconduct on the part of Hoover which could subject him to personal liability.

The complaint in this action contains allegations that Hoover misconstrued or misapplied sec. 36.16, Stats., thereby exceeding his authority and power under that statute. It is clear that the protection afforded by the principle of civil immunity attaches only to the consequences of official conduct and does not extend to an officer's actions as a private citizen. However, for the purpose of imposing liability for damages, a distinction must be made between those acts which constitute a mistake of judgment within the officer's lawful authority and those which are completely outside that authority.[21] Hoover's conduct in this case clearly falls within the former category and, therefore, within the scope of the immunity.

Some confusion in this respect has resulted from the rules which have developed concerning the right to maintain a declaratory judgment action to obtain a ruling as to the constitutionality or proper construction of a statutory provision. This court has, on several occasions,

---

[20] *See:* 3 Davis, *Administrative Law Treatise,* sec. 26.01; *Wasserman v. Kenosha, supra,* footnote 14; *Land, Log & Lumber Co. v. McIntyre* (1898), 100 Wis. 258, 262, 75 N. W. 964.

[21] 3 Davis, *Administrative Law Treatise,* pp. 531–536, sec. 26.05.

noted that sec. 269.56, Stats., does not make any provision for a suit against the state and that, as a result, declaratory judgments against the state are barred by principles of sovereign immunity.[22] However, the court has also recognized that the declaratory judgment procedure is particularly well-suited (in cases where such relief is otherwise appropriate) for resolving controversies as to the constitutionality or proper construction and application of statutory provisions.[23] As a result, it has been necessary to engage in a fiction that allows such actions to be brought against the officer or agency charged with administering the statute on the theory that a suit against a state officer or agency is not a suit against the state when it is based on the premise that the officer or agency is acting outside the bounds of his or its constitutional or jurisdictional authority.

The distinction between acts amounting to a mistake in official judgment and those demonstrating an excess of authority has not always been made clear. For example, in *Wisconsin Fertilizer Asso. v. Karns, supra,* the plaintiff sought a declaration that the commissioner of the motor vehicle department was required to classify certain fertilizers as "implements of husbandry" for purposes of exemption from registration requirements. The relevant statute provided that an "implement of husbandry" meant a vehicle or piece of equipment or machinery "designed for agricultural purposes, used exclusively in the conduct of agricultural operations and used principally off the highway." The commissioner

[22] *See: Kenosha v. State* (1967), 35 Wis. 2d 317, 323, 151 N. W. 2d 36; *Wisconsin Fertilizer Asso. v. Karns* (1968), 39 Wis. 2d 95, 100, 158 N. W. 2d 294; *Berlowitz v. Roach* (1947), 252 Wis. 61, 64, 30 N. W. 2d 256.
[23] *Wisconsin Fertilizer Asso. v. Karns, supra; Pension Management, Inc. v. Du Rose* (1973), 58 Wis. 2d 122, 128–132, 205 N. W. 2d 553.

argued that the statute empowered him to exercise judgment in his official capacity, that he was therefore entitled to make mistakes, and that he was not acting outside his jurisdictional or constitutional authority in making such mistakes. In rejecting the commissioner's contention, this court stated at page 101:

"While it may be true that a grant of discretion to an officer contemplates a certain amount of mistakes, to the extent that the officer's mistakes amount to the misconstruction or the misapplication of a statute, he is exceeding his authority as much as if he were operating under an unconstitutional statute."

The scope of the language employed in *Karns* must be limited by the purpose there sought to be achieved. That is, a finding that certain allegations are sufficient to overcome the procedural impediment to maintaining declaratory judgment actions against the state should not control the consideration of whether the officer's conduct is outside his jurisdictional authority for the purpose of removing the substantive bar to personal liability for damages. An officer's immunity from liability for damages does not affect his amenability to suit for declaratory or injunctive relief. The public policy considerations which have prompted the courts to grant the substantive immunity do not apply with equal force to actions for such relief.[24] Moreover, a number of courts have recognized the unfairness of imposing individual liability for damages resulting from the application of what is determined to be an unconstitutional statute where the administrating officer acted in good-faith reliance on the validity of the provision.

[24] *Richmond Black Police Officers Asso. v. City of Richmond* (D. C. Va. 1974), 386 Fed. Supp. 151; *Mattis v. Schnarr* (8th Cir. 1974), 502 Fed. 2d 588; *Kirstein v. Rector & Visitors of University of Virginia* (D. C. Va. 1970), 309 Fed. Supp. 184; *Harris County v. Hunt* (Tex. Civ. App. 1965), 388 S. W. 2d 459.

The third type of relief prayed for in the amended complaint in this action is a judgment, pursuant to sec. 269.56, Stats., declaring the plaintiffs' rights to have been classified as nonresidents for the periods in question and, of necessity, resolving the controversy as to the proper construction and application of sec. 36.16. The defendants demurred to this demand on the ground that "there is no presently existing justiciable controversy." The circuit court held that the plaintiffs' principal goal in the action was to recover the amounts alleged to have been unlawfully collected as nonresident tuition. It noted that "[e]xcept as it will permit recovery of the money, the declaration is an empty gesture." Because the court had concluded that there could be no recovery of the contested amounts, it exercised its discretion under sec. 269.56 (6) and declined to entertain the claim for declaratory relief on the ground that such a declaration would not settle the controversy and would be merely an advisory opinion.

On appeal, the plaintiffs contend that they are entitled to the requested declaration even though they may not recover the tuition payments. They take issue with the circuit court's characterization of the "principal goal" of the action as being the recovery of those amounts, and argue that the court abused its discretion in refusing to proceed on the claim for declaratory relief. In response, the defendants renew the objection voiced in their demurrer that the complaint does not state a justiciable controversy. They argue that there is no present right in the plaintiffs which will be affected by any future action on the part of the defendants because the plaintiffs are no longer students at the university and the complaint contains no allegation that a declaration of rights "will aid them in future conduct in regard to registering as students at the University of Wisconsin."

When a demurrer is interposed to a complaint for a declaratory judgment, the question presented to the trial court is whether the controversy is one which should be considered on the merits. The question before this court on this appeal is simply whether the declaratory judgment device may properly be used to adjudicate the plaintiffs' claim.

The basic requirement in asserting a claim for declaratory relief is that there be a "justiciable controversy." Under this requirement, a controversy is not a proper subject for declaratory relief unless it: (1) Involves a claim of right on the part of the plaintiff which is asserted against one who has an interest in contesting it; (2) is between two persons whose interests are adverse; (3) involves a legally protectible interest in the person seeking declaratory relief; and (4) is ripe for judicial determination.[25] These prerequisites to the maintenance of a declaratory judgment action are designed primarily to insure that a bona fide controversy exists and that the court, in resolving the questions raised, will not be acting in a merely advisory capacity.

In arguing that the elements of a justiciable controversy are satisfied in this case, the plaintiffs rely on *Hancock v. Board of Regents of University of Wisconsin* (1973), 61 Wis. 2d 484, 213 N. W. 2d 45. The claim in that case as to the construction and application of sec. 36.16, Stats. 1969, was substantially identical to the one presented here. The Board of Regents appealed from a circuit court determination that the plaintiff should have been classified as a resident for the 1971–1972 school year. This court held that the circuit court had no jurisdiction to entertain a declaratory judgment action

---

[25] *See: Rudolph v. Indian Hills Estates, Inc.* (1975), 68 Wis. 2d 768, 229 N. W. 2d 671; *American Medical Services, Inc. v. Mutual Fed. S. & L.* (1971), 52 Wis. 2d 198, 188 N. W. 2d 529; *Slawek v. Stroh* (1974), 62 Wis. 2d 295, 215 N. W. 2d 9.

because the plaintiff had failed to exhaust the review procedures made available by the Board of Regents for tuition claims. There was no justiciable controversy. The plaintiffs point out that the complaint in this action contains allegations that, at least with respect to a part of each plaintiff's claim, the review procedures have been exhausted.

The holding in *Hancock, supra,* does not require a conclusion that declaratory relief is appropriate in this case. The court did not address itself in *Hancock* to the propriety of declaratory relief where the plaintiffs have already left school and it is apparent that the declaration cannot serve to direct or aid the parties in their future relations to one another.

The underlying philosophy of the Uniform Declaratory Judgments Act is to enable controversies of a justiciable nature to be brought before the courts for settlement and determination prior to the time that a wrong has been threatened or committed. The purpose is facilitated by authorizing a court to take jurisdiction at a point earlier in time than it would do under ordinary remedial rules and procedures.[26] As such, the Act provides a remedy which is primarily anticipatory or preventative in nature.

Under sec. 269.56 (1), Stats. 1969, courts are empowered to grant declaratory relief "whether or not further relief is or could be claimed." The preferred view appears to be that declaratory relief is appropriate wherever it will serve a useful purpose, and the fact that another remedy exists is only one factor to consider in determining whether to entertain the action. To preclude declaratory relief, the alternative remedy should be

[26] *See: Borden Co. v. McDowell* (1959), 8 Wis. 2d 246, 99 N. W. 2d 146; *Petition of State ex rel. Attorney General* (1936), 220 Wis. 25, 28, 264 N. W. 633; 1 Anderson (2d ed.), *Actions for Declaratory Judgments,* pp. 12, 13, sec. 3.

speedy, effective and adequate or at least as well-suited to the plaintiffs' needs as declaratory relief.

A court cannot close its eyes to the purpose which a declaration of rights will serve in the particular case. It is not a sufficient ground for declaratory relief that the parties have a difference of opinion as to the proper construction and application of a particular statute. No anticipatory or preventative relief is sought in this action. To the extent that the complaint attempts to state a claim to relief under state law, the only consequence which the desired declaration of rights could have would be to settle the plaintiffs' rights to recover the amounts paid in nonresident tuition. The action is, in effect, one for damages. While there may be occasions when a declaration of rights may be appropriate in aid of a future action for damages, this is not such a case.

The procedure set forth in sec. 285.01, Stats., cannot be considered as merely an "alternative" remedy. The plaintiffs' claim against Hoover, individually, being barred by his substantive immunity, the only purpose which a declaration of the plaintiffs' rights to have been classified as residents during the time in question would serve would be to fix the state's obligation to refund the tuition. The fiction that an action for declaratory relief from the erroneous application of a statute is really against the individual officer or agency acting in excess of his or its authority becomes too apparent to be adhered to where no anticipatory or preventative objective will be served. A declaration which seeks to fix the state's responsibility to respond to a monetary claim is not authorized by Wisconsin's Declaratory Judgments Act. As one author has stated:

"The immunity of the state from suit, a much abused concept, is not altered or modified by the Declaratory Judgments Act. On several occasions an effort has been made to obtain a declaration of the state's duty to refund

or pay money, not for the purpose of executing the judgment, which was not under the law possible, but merely to obtain an adjudication of legal rights. Its persuasive effects, to induce a legislature to make an appropriation, might be considerable. Needless to say, such a proceeding is not sustainable and a court should decline jurisdiction, even though an ostensibly suable public officer is made defendant as an *alter ego* for the state." Borchard, *Declaratory Judgments* (2d ed. 1941), p. 374. *Also see:* 1 Anderson (2d ed.), *Actions for Declaratory Judgments,* p. 348, sec. 179.

Moreover, to the extent that the conditions set forth in sec. 285.01, Stats., for suits against the state on claims of the sort involved here have not been met, the controversy in this case is not ripe for judicial determination. The basic rationale of the "ripeness" doctrine is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative or, in this case, legislative policies.[27]

The plaintiffs nevertheless urge this court to construe sec. 36.16, Stats., with regard to the questions presented by the federal court's order for a stay. The plaintiffs argue that such a construction would be in the public interest in that it would provide assistance to state university officials in considering future tuition matters. In addition, the plaintiffs point out that a decision on the questions of construction could result in the termination of the federal court proceedings.

It appears that this court has the inherent authority to consider questions of great public importance even though the normal procedural requirements for such a consideration are lacking.[28] This authority has been

[27] *See: Abbott Laboratories v. Gardner* (1967), 387 U. S. 136, 148, 149, 87 Sup. Ct. 1507, 18 L. Ed. 2d 681.

[28] *See: Muench v. Public Service Comm.* (1952), 261 Wis. 492, 53 N. W. 2d 514; *State ex rel. Milwaukee Medical College v. Chittenden* (1906), 127 Wis. 468, 504, 505, 107 N. W. 500.

exercised elsewhere where the formal requirements for declaratory relief have not been fully satisfied. *See:* 1 Anderson (2d ed.), *Actions for Declaratory Judgments,* pp. 126–129, sec. 63.

The general question of a student's right to be properly classified for tuition purposes is, of course, a matter of continuing concern. However, the questions raised by the complaint in this action are directed to the proper construction and application of a statute which is no longer controlling on that subject. Section 36.27, Stats. 1973, which sets forth the current standards for the determination of tuition status, differs in several material respects from sec. 36.16, Stats. 1969, under which this dispute arose. A resolution of the questions raised concerning the proper construction of the earlier statute would therefore, provide little or no guidance to those who are now or will in the future be concerned with the classification of students for tuition purposes.[29] The resolution of the controversy presented here is of importance only to the immediate parties to this action.

Further, if the plaintiffs present their claims to the legislature as required by statute, the legislature may direct them to be paid. Under those circumstances the construction of a now nonexistent statute would serve no useful purpose and the question would be moot. If the legislature disallows the claims the construction of sec. 36.16, Stats. 1969 can be determined in the proceedings provided for in sec. 285.01.

We are mindful that the federal court has abstained from proceeding in the case filed there to await a construction of the challenged statute by the state courts.

---

[29] Sec. 36.27 (2), Stats. 1973, has been repealed and reenacted pursuant to the provisions of ch. 39, sec. 282t, Laws of 1975. The new sec. 36.27 (2), Stats. 1975, is similar in format to sec. 36.16, Stats. 1969, under which this controversy arose. However, in several key respects material to the issues raised by the pleadings in this action the two sections differ substantially. This change does not alter our conclusion that no public purpose is served by a construction of sec. 36.16, Stats. 1969.

We have concluded declaratory relief is not available to the plaintiffs for the reasons set forth above. The plaintiffs have not pursued the right remedy. If and when the issue of the construction of sec. 36.16, Stats. 1969, comes before us as a result of a proceeding under sec. 285.01, we will construe the statute.

*By the Court.*—Order affirmed.

DAY, J., took no part.