LIFER, by Edward Grutzner, his Guardian *ad litem*, Appellant, v. RAYMOND, and another, Respondents.

*No. 75–646. Argued October 4, 1977.—*
*Decided November 14, 1977.*
(Also reported in 259 N. W. 2d 537.)

504

For the appellant there was a brief by *Grutzner, Byron & Holland, S. C.* and oral argument by *Edward Grutzner,* all of Beloit.

For the respondents there was a brief by *Axley, Brynelson, Herrick & Gehl,* and oral argument by *Griffin G. Dorschel,* all of Madison.

ROBERT W. HANSEN, J.   How fat is too fat? Who is too fat to be licensed to get behind the wheel and drive an automobile? Plaintiff alleges that the 320-

pound driver of the auto in which he was a passenger was so fat that she should not have been granted a probationary license to drive an automobile, even though she passed the road test portion of the examination.

At what point on the scales does an overweight person suffer a physical disability that prevents him or her from exercising reasonable control over a motor vehicle? The plaintiff answers that the duty to determine when corpulency becomes disabling is on the road test examiner at the time a road test is administered. The plaintiff sues the defendant examiner for breaching a duty owed to the plaintiff passenger when he passed Jeannine M. Yingling in the road test portion of her examination.

The complaint does not allege that Jeannine M. Yingling did not successfully complete the written test or the road test as conducted by the defendant. The complaint admits that the defendant, in certifying that Jeannine M. Yingling had passed the test given, acted in good faith.[1] Sole reliance for the claim of breach of a duty owed by this defendant to this plaintiff is on the statute which provides:

"343.06 Persons not to be licensed. The division shall not issue a license:
" . . .
" (7) To any person who is afflicted with or suffering from any mental or physical disability or disease such as to prevent him from exercising reasonable control over a motor vehicle."

Therefore, the initial inquiry on this appeal must be the nature of the duty delegated to or devolving upon a road test examiner, a state officer, by virtue of the statute.

[1] On this point the complaint alleges: "Defendant Raymond acted in good faith in passing Jeannine M. Yingling in the road test portion of her examination."

In sustaining the demurrer,[2] the trial court did not consider the issue of the civil immunity of defendant before it on demurrer. However, this court has since held that: "The objection of an officer's civil immunity, affecting as it does his substantive liability for damages, is properly presented by a demurrer on the ground that the complaint fails to state a cause of action."[3] It is true that in some cases the question of whether a particular act of a state officer is protected by civil immunity may require further factual development.[4] However, where the issue of civil immunity can be resolved as a matter of law from the face of the complaint, it is properly resolved on demurrer.[5]

As we stated in *Lister,* the general rule in this state is that: "[A] public officer is not personally liable to one injured as a result of an act performed within the scope of his official authority and in the line of his official duty."[6] In *Lister* we pointed out that the most

---

[2] The trial court concluded that: "[T]he duty created under the statute involved is a duty generally owing to the public, a violation of which confers no cause of action on the plaintiff as an individual and that therefore in the absence of a common law duty, the demurrer to the complaint is sustained. . . ." Citing and quoting *McNeill v. Jacobson,* 55 Wis.2d 254, 259, 198 N.W.2d 611 (1972), in which this court held: "'[T]he general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing a civil liability.'" Quoting 50 Am. Jur., *Statutes,* p. 582, sec. 586. *Compare Coffey v. Milwaukee,* 74 Wis.2d 526, 535–537, 247 N.W.2d 132 (1976).

[3] *Lister v. Board of Regents,* 72 Wis.2d 282, 299, 240 N.W.2d 610 (1976).

[4] *See, e.g., Cords v. Ehly,* 62 Wis.2d 31, 41, 214 N.W.2d 432 (1974).

[5] *See, e.g., Lister v. Board of Regents, supra,* n. 3, at 299.

[6] *Id.* at 300, citing 63 Am. Jur.2d, *Public Officers and Employees,* p. 798, sec. 288.

generally recognized exception to the rule of immunity is that an officer is liable for damages resulting from his negligent performance of a purely ministerial duty,[7] and that a public officer's duty is "ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion."[8] Thus in *Lister* where the statute involved, sec. 36.16, Stats., required the registrar of the state university to determine bona fide residence for the purpose of assessing in-state tuition by considering certain listed factors, this court held that the statute "required the exercise of some discretion and judgment in making the determination of who is and who is not entitled to resident status for tuition purposes[9] as a matter of law.

The *Lister* holding, as well as earlier cases in accord with it,[10] require that for an act to come within the ministerial or nondiscretionary exception to the civil immunity rule, "nothing remains for judgment or discretion."[11] It follows that acts which "involve the exercise of judgment or discretion rather than the mere performance of a prescribed task" do not come within the "ministerial duty" exception to civil immunity rule.[12]

---

[7] *Id.* at 300, 301, citing *Meyer v. Carman*, 271 Wis. 329, 73 N.W.2d 514 (1955); *Chart v. Dvorak*, 57 Wis.2d 92, 203 N.W.2d 673 (1973); *Cords v. Ehly, supra*, n. 4.

[8] *Id.* at 301, citing *Meyer v. Carman, supra; Clausen v. Eckstein*, 7 Wis.2d 409, 97 N.W.2d 201 (1959).

[9] *Id.* at 301.

[10] *See: Druecker v. Salomon*, 21 Wis. 621, 630 (1863); *Wasserman v. Kenosha*, 217 Wis. 223, 258 N.W. 857 (1935); *Meyer v. Carman, supra*, n. 7, at 332; *Clausen v. Eckstein, supra*, n. 8, at 413. *See also: Cords v. Ehly, supra*, n. 4.

[11] *Lister v. Board of Regents, supra*, n. 3, at 301.

[12] *Meyer v. Carman, supra*, n. 7, at 332.

It is crystal clear that any determination by a road test examiner that an applicant for a driver's license was so overweight as to be suffering from a "physical disability or disease such as to prevent him from exercising reasonable control over a motor vehicle"[13] involves the exercise of judgment and discretion. The complaint does not allege that the motor vehicle division has promulgated internal rules which establish the maximum pounds permitted per inch of height. Any determination by a road test examiner that by reason of excess poundage a particular applicant was unable to exercise reasonable control over a motor vehicle is entirely an exercise of judgment on his part. Therefore, the performance of the duty delegated to a state road examiner under sec. 343.06(7), Stats., is within the rule of civil immunity as a matter of law.

It is to be noted that the complaint alleges that: "The act of passing Jeannine M. Yingling in the road test . . . was not an act done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions, but was done in the performance of a ministerial function." The reference to legislative or judicial type functions is from the *Holytz* decision[14] abrogating the doctrine of governmental immunity in this state, but without "imposing liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions."[15] Plaintiff contends: "If *Holytz* really means what it says, then there should be no distinction between the liability of the state employee or the private citizen."[16] That is not what *Holytz* says or means. *Holytz* dealt with the doctrine of sovereign immunity in an action against a governmental body, not

[13] Sec. 343.06(7), Stats.

[14] *Holytz v. Milwaukee*, 17 Wis.2d 26, 40, 115 N.W.2d 618 (1962).

[15] *Id.* at 40.

[16] Appellant's Brief at 19.

a public officer. It resulted in sec. 895.43, Stats., which provides a procedure for bringing tort actions against "political corporations, governmental subdivisions or agencies," and their officers, agents or employees. Our court has held that this statute does not apply to the state or a state agency.[17]

Sec. 895.43(3), Stats., goes further to provide that no suit shall be brought against any political corporation, governmental subdivision or any agency thereof in this state *or its officers, officials, agents or employees* "for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." Since the statute as a whole does not apply to the state or state departments, this subsection does not apply to state officers or employees. As to the civil immunity of this defendant, he is liable under *Lister* in damages only for injuries resulting from his purely ministerial acts. Since we have concluded that the act complained of, passing Jeannine M. Yingling on the road test portion of her examination despite the provisions of sec. 343.06(7), Stats., is discretionary as a matter of law, we hold the defendant immune from suit as a matter of law.

Although the plaintiff contends that the defendant is immune from suit only for acts which are legislative, judicial, quasi-legislative or quasi-judicial, we base our contrary conclusion on the principles of official immunity set out in *Lister* that the defendant is not liable for his discretionary acts. To so hold is not to imply that the test for the immunity of a state officer set out in *Lister* is different from the test for the immunity of a municipal officer under sec. 895.43(3), Stats. A quasi-legislative act involves the exercise of discretion or judg-

[17] *Townsend v. Wisconsin Desert Horse Asso.,* 42 Wis.2d 414, 423, 167 N.W.2d 425 (1969).

ment in determining the policy to be carried out or the rule to be followed. A quasi-judicial act involves the exercise of discretion and judgment in the application of a rule to specific facts.[18] Acts that are "legislative, quasi-legislative, judicial or quasi-judicial functions,"[19] are, by definition, nonministerial acts.[20] As applied, the terms "quasi-judicial or quasi-legislative" and "discretionary" are synonymous and the two tests result in the same finding. That finding is that this defendant is not liable to the plaintiff in damages, as a matter of law, for determining that at the time he administered the driving test Jeannine M. Yingling was not too fat to drive.

*By the Court.*—Judgment affirmed.

[18] In *Weiss v. Milwaukee*, 79 Wis.2d 213, 233, 255 N.W.2d 496 (1977), the court stated: "The city, in the exercise of its discretion, placed the stop sign at the southwest corner of the intersection." In so stating it characterized that act as a quasi-judicial act, "a legal determination based upon the application of the statutes and rules." *Id.* at 230.

[19] Sec. 895.43(3), Stats.

[20] *Compare: Allstate Ins. v. Metropolitan Sewerage Comm.*, 80 Wis.2d 10, 17–18, 258 N.W.2d 148 (1977) in which we held that the power of a municipal corporation to issue a permit or license is a quasi-judicial function.