DONALD E. PERCY, Secretary Department of Health and SocialServices
Your first question is:
 "1. Does the Department of Health and Social Services have the authority to establish training standards and license those ambulance attendants for those medical services above the EMT — Basic level but below the Paramedic level under Section 146.50 of the Statutes?" *Page 146 
I believe the answer is yes.
Section 146.35, Stats., relating to emergency medical service by persons licensed as "emergency medical technician — advanced (paramedic)" was created in the 1973 legislative session as was see. 146.50, relating to ambulance service providers and ambulance attendants.
It may be that the reason the Legislature provided less specific training standards in sec. 146.50 than in sec. 146.35, is that the former was intended to take advantage of a grant from the Highway Traffic Safety Administration. Chapter 321, Laws of 1973, which created sec. 146.50, Stats., was enacted from AB 538, to which was appended a fiscal note containing the following:
 "Other expenses are assumed covered by the federally funded grant."
The bill presumably was drafted to exclude details which might run counter to federal regulation. It left to the Department, however, considerable authority to fill in details.
Section 146.50 (3), Stats., as amended by sec. 1217m of ch. 29, Laws of 1977, authorizes the secretary "to adopt rules necessary for administration" of the section. Subsection (6)(b) requires that applicants have "completed a course of instruction and training prescribed by the department or have presented evidence satisfactory to the department of sufficient education and training in the field of emergency care."
Subsection (6)(c), as amended by sec. 1219 of ch. 29, Laws of 1977, requires that applicants have "passed an examination approved by the department."
Subsection (6)(d) provides that they have "such additional qualifications as may be required by the department." Also see ch. 167, Laws of 1977.
These statutory provisions give you ample authority to establish the standards set out in your first question.
The National Highway Safety Program Standard 4.4.11 provides in part: *Page 147 
 "Each State, in cooperation with its local political subdivisions, shall have a program to ensure that persons involved in highway accidents receive prompt emergency medical care under the range of emergency conditions encountered. The program shall provide, as a minimum, that:
 "1. There are training, licensing, and related requirements (as appropriate) for ambulance and rescue vehicle operators, attendants, drivers, and dispatchers."
The program for providing safe ambulance service is in the field of what the United States Supreme Court terms a "scheme of cooperative federalism," where "coordinate state and federal efforts exist within a complementary administrative framework, in the pursuit of common purposes." New York State Dept. of SocialServices v. Dublino, 413 U.S. 411, 413, 421 (1973).
Your second question is:
 "2. Does the Department have the authority to establish training standards and license those ambulance attendants mentioned in 1. above under the authority of Section 146.50 of the Statutes with the attendant Administrative Rule H 20 as it presently reads?"
Since your first question dealt with your statutory authority, I assume your second question is whether your Rule H 20 is a valid exercise of that authority.
Your Rule H 20 contains numerous provisions. Since it is possible for a rule which is generally valid to be applied in a particular case so as to be invalid, a court would probably decline to give a sweeping approval or disapproval in the absence of a specific situation.
Generally speaking, however, your Rule H 20 appears to me to be within the scope of your statutory authority. Any portion of your rules in conflict with the statute is void. Compare H 20.03 (1)(b) with sec. 146.50 (4), Stats. (1977).
Whether there is any question of conformity with federal standards can best be determined from the National Highway Safety Bureau.
 Your third question is: *Page 148 
 "3. Dependent upon the answers to 1. and 2., to what extent is the Department exposed to be included as a defendant in a malpractice suit as a result of not having established training standards and licensure."
The Supreme Court of Wisconsin recently laid down a set of guidelines relative to liability of public officers and employes. They appear in Lister v. Board of Regents., 72 Wis.2d 282,300-301, 301-302, 240 N.W.2d 610 (1976).
 "The general rule is that a public officer is not personally liable to one injured as a result of an act performed within the scope of his official authority and in the line of his official duty. The various exceptions to this rule are determined by a judicial balancing of the need of public officers to perform their functions freely against the right of an aggrieved party to seek redress.
 "The most generally recognized exception to the rule of immunity is that an officer is liable for damages resulting from his negligent performance of a purely ministerial duty. A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.
"***
 "Beyond the question of liability for the negligent performance of purely ministerial duties, the most generally favored principle is that public officers are immune from liability for damages resulting from their negligence or unintentional fault in the performance of discretionary functions. Otherwise stated, there is no substantive liability for damages resulting from mistakes in judgment where the officer is specifically empowered to exercise such judgment. It must be conceded that an officer charged with the administration and application of the standards set forth in sec. 36.16, Stats., could make mistakes in judgment which could result in an erroneous classification. However, at least in the absence of some malicious, wilful and intentional misconduct, the policy considerations underlying the immunity principle require that *Page 149 
the officer be free from the threat of personal liability for damages resulting from mistakes of judgment. The complaint contains no allegation of malicious or intentional misconduct on the part of Hoover which could subject him to personal liability."
Under the quoted rules, your Department, its officers and employes would not be held liable for errors of judgment in making and administering rules within the scope of statutory authority. The Department is immune from an action in tort.
An officer or employe who wilfully and maliciously issues a license to an ambulance attendant, who does not meet established standards, might be held liable for injuries caused by the attendant.
If an employe should refuse to perform the ministerial duty of delivering possession of a license which had been duly authorized, such employe might be held responsible for damage resulting from the withholding.
The recent cases of Lifer v. Raymond, 80 Wis.2d 503,259 N.W.2d 537 (1977), and Cords v. Anderson, 80 Wis.2d 525, 259 N.W.2d 672
(1977), illustrate that it is not always easy to determine whether a public employe's duty is "absolute, certain and imperative" so as to subject him for damages for negligence as inCords; or whether it is "discretionary" so that he is immune from liability as in Lifer.
It is impossible to predict a court s decision on one of the innumerable sets of facts which might arise. Generally speaking, it seems more difficult to envision situations in which officers and employes would be liable for malpractice than the contrary. That is not to say that suits might not be brought against them in which the discretionary character of their acts would be the issue for a court to determine.
You have not asked about liability for penalties under sec.946.12, Stats., with which I assume you are familiar. Liability under that statute has similar limitations.
BCL:BL *Page 150