The MANITOWOC COMPANY, INC., a Wisconsin corporation, Plaintiff-Appellant and Cross-Respondent,

v.

CITY OF STURGEON BAY, and Wisconsin Department of Revenue, Defendants-Respondents and Cross-Appellants.†

Court of Appeals

*No. 83–2340. Submitted on briefs October 1, 1984.—
Decided December 11, 1984.*
(Also reported in 362 N.W.2d 432.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Robert V. Abendroth* and *Whyte & Hirschboeck S.C.* of Milwaukee.

For the respondent City of Sturgeon Bay the cause was submitted on the brief of *Chester C. Stauffacher*.

For the respondent and cross-appellant Wisconsin Department of Revenue the cause was submitted on the briefs of *Bronson C. La Follette, attorney general,* and *John C. Murphy, assistant attorney general.*

Before Foley, P.J.,[1] Dean and Cane, JJ.

[1] This opinion was circulated and approved before Judge Foley's death.

CANE, J. The Manitowoc Company appeals a judgment dismissing its claims for a refund of property taxes paid to the City of Sturgeon Bay. The judgment also dismissed Manitowoc's request for declaratory relief from future tax assessments. Manitowoc contends that two graving docks used in the construction and repair of ships are manufacturing machines that are exempt from property taxes. The trial court determined that the graving docks are not exempt because they are not used exclusively for manufacturing as required by sec. 70.11(27), Stats.

The Wisconsin Department of Revenue cross-appeals the trial court's refusal to dismiss these actions for lack of jurisdiction. The department claims that an action for a tax refund cannot be maintained under sec. 74.73 (1), Stats., when the tax was allegedly void ab initio. The department also contends that the refund and declaratory relief claims violate the state's sovereign immunity. The department maintains that certiorari is the exclusive remedy for a tax assessment on exempt property.

We conclude that these actions seeking the refund of a void tax can be maintained against Sturgeon Bay as a common law action on a debt. We also conclude that a refund action against the city is not a prohibited action against the state. We also conclude that declaratory relief from future tax assessments is improper because property tax exemptions are based on use, which must be determined yearly. We further conclude that an exemption from property tax is not lost because the property is used incidentally for a nonexempt purpose. Finally, we conclude that Manitowoc's graving docks are machines rather than buildings, and that they are used directly in the manufacturing process as required by sec. 70.11(27). We therefore reverse the judgment dismissing these actions and remand the matter to the trial court to calculate the tax refund and interest owed to Manitowoc.

Sturgeon Bay levied and collected property taxes on Manitowoc's graving docks for the years 1976–82. Manitowoc paid the taxes under protest and filed refund claims with the city each year. The city denied the claims. Manitowoc then commenced these actions to recover the taxes paid. Manitowoc also sought declaratory relief against the Department of Revenue directing the agency to declare the graving docks exempt from future assessments. The department determines what manufacturing machinery is exempt from local property taxes. Section 70.995(7)(c), Stats.

The large graving dock is a four-walled structure with a flat working surface between the walls. It is not enclosed by a roof. It is designed to be flooded or drained; it is flooded so that ships may be floated into or out of the dock. Shipbuilding and repair is performed inside the enclosure of the dock after it is drained. Inspection of ships also occurs in the docks. The ships rest on keel blocks situated on the dock floor while work is performed. Precise alignment of ship parts is accomplished by using the dock floor and walls as planes of reference. The small graving dock is an old ship hull that has been converted to perform the same functions as the large graving dock.

## JURISDICTION

The first issue that we must address is whether the trial court had jurisdiction of these actions. The department argues that Manitowoc improperly brought its claims under sec. 74.73(1), which authorizes actions to recover illegal taxes. The department interprets the decision in *G. Heileman Brewing Co. v. City of La Crosse*, 105 Wis. 2d 152, 312 N.W.2d 875 (Ct. App. 1981), as precluding a statutory action to recover a void tax. The *Heileman* decision recognized that compliance with the

statutory recovery procedure is not necessary to maintain an action to recover a void tax, and that a common law action for recovery of a void tax may be maintained. *Id.* at 161, 312 N.W.2d at 879; *see also Family Hospital Nursing Home, Inc. v. City of Milwaukee,* 78 Wis. 2d 312, 326, 254.N.W.2d 268, 276 (1977).

Whether the common law right to recover a void tax precludes a statutory action is irrelevant to the trial court's jurisdiction of Manitowoc's actions. The *Heileman* decision held that a common law action can be maintained if the tax was paid under protest. *Heileman,* 105 Wis. 2d at 161–63, 312 N.W.2d at 879–80. Such an action is appropriate to recover money had and received. *Id.* Manitowoc did pay the property taxes under protest in these actions and commenced each action promptly after Sturgeon Bay denied its claims for a refund. We therefore consider these actions to be common law actions to recover a void tax.

## SOVEREIGN IMMUNITY

The department next argues that these actions violate the state's sovereign immunity. It claims that the refund cannot be granted without reviewing the department's classification of the property as taxable, and therefore the actions are effectively against the state. The department also argues that declaratory relief cannot be granted without ordering the department to reclassify the property as exempt and that such an order violates the state's immunity.

The department waived any sovereign immunity objection to the actions commenced during the years 1976–80. Sovereign immunity is a matter of personal jurisdiction that is waived if not raised in the state's responsive pleading. *City of Kenosha v. State,* 35 Wis. 2d 317,

328, 151 N.W.2d 36, 42 (1967). The state failed to raise the sovereign immunity issue in any of its answers until 1981. The department waived the objection therefore except for the actions commenced in 1981 and 1982.

The state's sovereign immunity is not violated by these refund actions in any event because they are not suits against the state. Whether the defense of sovereign immunity may be asserted depends upon the nature of the relief that is sought. *Lister v. Board of Regents,* 72 Wis. 2d 282, 292, 240 N.W.2d 610, 617 (1976). The state is the real party in interest and is entitled to invoke its sovereign immunity only when an action is in essence for the recovery of money from the state. *Id.* These tax refund actions, however, seek recovery from Sturgeon Bay. Although the trial court must review the department's classification decision, only the city is liable for an erroneous classification. Judicial review of the state's classification of property for local tax purposes therefore is not an action against the state.

## DECLARATORY JUDGMENT

Declaratory judgment requiring the department to exempt the graving docks in the future also does not violate the state's sovereign immunity. Although declaratory judgments against the state are barred by the principles of sovereign immunity, *id.* at 302–03, 240 N.W.2d at 622–23, whether a declaratory judgment is against the state depends on whether the relief sought will impose liability on the state. Declaratory judgment exempting Manitowoc's property from future property taxes is intended to prevent Sturgeon Bay from collecting the taxes. A declaratory judgment of exemption therefore affects the interests of the city rather than the state.

Such a declaratory judgment is not an action against the state and does not violate the state's sovereign immunity.

■

A judgment declaring an indefinite future exemption from property taxes, however, is not a proper remedy for taxpayers. The tax exemption for manufacturing machinery is based on property use, which must be determined yearly. Declaratory relief cannot be granted beyond what the evidence will support at trial. *Family Hospital,* 78 Wis. 2d at 327, 254 N.W.2d at 276.

## EXCLUSIVE USE

Because the trial court had jurisdiction of these actions, we must next determine whether it properly determined that the graving docks are not exempt under sec. 70.11(27). The trial court denied the exemption because the docks are not used 100% of the time for manufacturing. The trial court found that the small graving dock is used exclusively for repairing ships, which it ruled is not manufacturing. The trial court also found that the large graving dock is used 95% of the time for constructing and repairing ships. It did not determine the percentage of time devoted to each function. Finally, the court found that the large graving dock was also used to inspect ships to determine whether they needed repair. The court ruled that such inspections are not manufacturing.

■

Initially, we conclude that the use of the docks for ship repair does not violate the exclusivity requirement of sec. 70.11(27). The exemption statute defines manufacturing as including activities specified in sec. 70.995 (2), Stats., which lists a number of industry classifications from the Standard Industrial Classification Man-

ual published by the United States Printing Office. The statute provides that property is manufacturing property if it is included by the manual in one of the major industry groups listed in the statute. Section 70.995 (2)(t), Stats., includes the transportation equipment industry, which the Standard Industrial Classification Manual defines as including shipbuilding and repairing. Ship repair therefore is a manufacturing activity for purposes of sec. 70.11(27), and machinery used in ship repair may qualify as exempt property.

Use of the large graving dock to inspect ships is an incidental deviation from ship construction and repair. Ships are inspected, as required by federal law, to determine whether repairs are necessary. The trial court found, however, that 95% of the dock's use was for actual construction and repair of ships. The dock's use for inspections is incidental relative to the dock's primary purpose.

Incidental use of manufacturing property for a nonexempt purpose does not violate the exclusivity requirement of sec. 70.11(27). The trial court interpreted the statutory requirement of exclusive use in manufacturing as permitting absolutely no deviation from manufacturing. The trial court reached this conclusion by giving deference to the department's interpretation of the statute. Our supreme court has previously held, however, that incidental and comparatively inconsequential use of property for a nonexempt purpose does not destroy an exemption from property taxes. *Alonzo Cudworth Post No. 23 v. City of Milwaukee,* 42 Wis. 2d 1, 12, 165 N.W.2d 397, 403 (1969); *Engineers and Scientists of Milwaukee, Inc. v. City of Milwaukee,* 38 Wis. 2d 550, 559, 157 N.W.2d 572, 577 (1968). The supreme court's interpretation of similar statutory language therefore conflicts with that of the department and the trial court.

Because we do not give deference to an administrative interpretation of a statute that conflicts with prior case law, we conclude that the exemption in this case was not destroyed by the incidental use of the large graving dock to inspect ships. *See Wisconsin's Environmental Decade, Inc..v. PSC,* 98 Wis. 2d 682, 693–94, 298 N.W.2d 205, 209–10 (Ct. App. 1980).

## MACHINERY

We must next determine whether the graving docks are machinery or buildings and, if they are machinery, whether they are used directly in manufacturing. Section 70.11(27) does not exempt buildings from taxation, and it requires that exempt machinery be used directly in manufacturing. The department contends that the docks are functionally equivalent to buildings, with the dock walls keeping the water out so that work can be performed on the dock floors. The department also argues that the docks are not used directly in manufacturing even if they are machinery. The department contends that while the docks facilitate manufacturing, they do not perform the actual work of ship construction and repair.

Our supreme court has defined the term "machine" as a structure "whose utility is principally and primarily a significantly contributive factor in the actual manufacture or production of the product itself." *Wisconsin Department of Revenue v. Greiling,* 112 Wis. 2d 602, 607, 334 N.W.2d 118, 121 (1983). Under the use or function test adopted in *Greiling,* a structure is a machine if it performs work. *Id.* at 606, 334 N.W.2d at 120. The use or function test has been applied to determine whether a structure is a machine or a building for purposes of sec. 70.11(27). *See Ladish Malting Co. v. Wis-*

*consin Department of Revenue,* 98 Wis.. 2d 496, 510, 297
N.W.2d 56, 62 (Ct. App. 1980).

The trial court found that the docks function as: (1)
a plane of reference for the precise alignment of ship
parts during construction and repair; (2) a table or
erecting platform for the construction and repair of
ships; and (3) as a launching mechanism to float fin-
ished ships out of the docks. These trial court findings
are not clearly erroneous. Section 805.17(2), Stats. Our
application of the *Greiling* definition of "machine" to
these facts therefore is a question of law. *See H. Sam-
uels Co. v. Wisconsin Department of Revenue,* 70 Wis. 2d
1076, 1083–84, 236 N.W.2d 250, 253–54 (1975); *Heile-
man,* 105 Wis. 2d at 162, 312 N.W.2d at 880.

Applying the *Greiling* test to the facts of this case, we
conclude that the graving docks are machines. The criti-
cal element of the *Greiling* test is whether a structure
performs work. *Greiling,* 112 Wis. 2d at 606, 334 N.W.
2d at 120. We conclude that the graving docks are ma-
chines because they do perform work. The launching
function of the docks operates like a conveyor belt, which
clearly accomplishes work. The use of the dock to hold
ships out of the water so that construction and repair
can occur is like the work platform of other assembly
lines. The docks also function like a garageman's hoist
by holding ships out of the water. Work is done by
holding the ships aloft in this manner. Finally, the use
of the docks as planes of reference for the precise align-
ment of ship parts renders the docks comparable to a
sophisticated measuring instrument. Such a measuring
function accomplishes work by facilitating the more ef-
ficient alignment of ship parts. The docks do perform
work therefore and, under the *Greiling* test, we consider
them to be machines rather than buildings.

## DIRECTLY USED IN MANUFACTURING

The final issue that we must determine is whether the docks are machines that are used directly in manufacturing. Although sec. 70.11(27) does not define the term "directly," we believe our supreme court has implicitly defined the term within its definition of "machine." In *Greiling*, the supreme court defined a machine as a structure "whose utility is principally and primarily a significantly contributive factor in the actual manufacturing or production of the product itself." *Id.* at 607, 334 N.W.2d at 121; *see also Ladish*, 98 Wis. 2d at 506, 297 N.W.2d at 60. This definition is clearly underinclusive as a definition of machine because it excludes machines not used in manufacturing. We believe the definition more accurately defines the concept of machines used directly in manufacturing. Construing the definition as such, machines used directly in manufacturing are "principally and primarily a significantly contributive factor" in the manufacturing process.

Because the definition is admittedly abstract, we believe a fuller explanation will make its application to this case clearer. The principal ambiguity in the definition is whether it excludes machines that do not actually change raw materials into a finished product. The department argues that the docks are not directly used in manufacturing because they are not involved in the physical assembling of ships.

We reject the department's "physical change" test in favor of an "integrated plant" test for classifying property directly used in manufacturing. Under the integrated plant test, machinery that is integrated into a synchronized system of manufacturing is used directly in manufacturing whether or not it actually causes a physical change in raw materials. *See Niagara Mohawk*

*Power Corp. v. Wanamaker,* 144 N.Y.S.2d 458, 461–62 (1955). Defining manufacturing machinery only as those structures that produce a physical change in the raw materials used in the manufacturing process ignores the essential contribution of other machines integrated into manufacturing systems. *See Floyd Charcoal Co. v. Director of Revenue,* 599 S.W.2d 173, 178 (Mo. 1980). The integrated plant test fully comports with the *Greiling* requirement that manufacturing machinery be a "significantly contributive factor" in manufacturing.

Applying the definition of "directly" to Manitowoc's graving docks, we conclude that the docks are used directly in manufacturing. The trial court found that the docks are functionally integrated into the manufacturing process. This finding is based on the testimony of industry experts, and it is not clearly erroneous. The docks are an integral part of the assembly line used in ship construction, and they also operate like a conveyor belt to move ships to and from the assembly line. Considering the manufacturing process as an integrated plant, the docks are a significantly contributive factor in shipbuilding. Because the docks are used directly in manufacturing, we conclude that they are exempt machines under sec. 70.11 (27), Stats.

*By the Court.*—Judgment reversed and cause remanded. Costs to The Manitowoc Company.