Leo GEIS and Ruth A. Geis and Ready Mixed
Concrete, Inc., Plaintiffs-Respondents,

v.

CITY OF FOND DU LAC and Wisconsin
Department of Revenue, Defendants-
Appellants.

Court of Appeals

*No. 86–1790. Submitted on briefs April 20, 1987.—Decided
May 20, 1987.*

(Also reported in 409 N.W.2d 148.)

For the defendants-appellants the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general and *William H. Wilker,* assistant attorney general, attorneys for Wisconsin Department of Revenue, and *Frank John Endejan,* attorney for City of Fond du Lac.

For the plaintiffs-respondents the cause was submitted on the brief of *Douglas J. Ondrasek* of *Edgarton, Ondrasek, Hobbs, Petak & Massey* of Fond du Lac.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. The City of Fond du Lac (city) and the Wisconsin Department of Revenue (department) appeal a circuit court judgment designating certain property belonging to Leo and Ruth Geis and Ready Mixed Concrete, Inc. (collectively, Ready Mix) tax-exempt under sec. 70.11(27), Stats. Ready Mix brought an action seeking a restraining order and a refund of taxes paid to the city of Fond du Lac from 1979 to 1982. The city and the department contend that the Ready Mix batch plant building, or shell, three silos containing sand and gravel, the control room, a lavatory and an employee lounge should not be exempt from taxation. The trial court concluded that all those areas except the employee lounge were tax-exempt.[1] Because we conclude that the lavatory is not entitled to tax-exempt status, we affirm in part and reverse in part.

Ready Mix manufactures concrete. Concrete is produced by mixing sand, gravel, cement and water in precise proportions to meet certain specifications. The silos used to store the sand and stone have probes and weeping holes. These silos assure a consistent mix in the gravel, prevent the "fines" (very fine sand) from blowing away and allow the moisture content of the sand to be monitored and regulated through the use of probes and weeping holes. The silos also prevent the

---

[1]The trial court found that the employee lounge area was not part of the manufacturing process. That finding is not being contested by either party on appeal.

sand from being contaminated with mud or other impurities.

The control room contains a sophisticated computer. Computer cards containing specifications for a master mix are inserted into the computer to ensure that the proper proportion of materials will be used to manufacture the concrete. The control room must maintain a constant temperature because of the computerized electronic equipment.

The batch plant building is basically a shell welded and bolted to machinery inside. To remove any machinery one would have to dismantle the shell. The batch plant shell ensures that the equipment is protected from the elements and that a constant temperature is maintained and also provides a means to control the humidity (necessary for the protection of the computer equipment). The shell is unique in shape and size, being designed specifically to cover the batch plant.

The primary issue before this court is whether the trial court was correct when it concluded that the shell, control room, silos and lavatory were exempt from taxation under sec. 70.11(27), Stats. That section reads in pertinent part:

> [Property exempted from general property taxes is:] **(27) Manufacturing machinery and specific processing equipment.** Manufacturing machinery and specific processing equipment, exclusively and directly used by a manufacturer in manufacturing tangible personal property. In this section, "manufacturing machinery and specific processing equipment" means any combination of electrical, mechanical or chemical means, including special foundations therefor, designed to work together in the transformation of materials or

substances into new articles or components, including parts therefor, regardless of ownership and regardless of attachment to real property. This shall not be construed to include materials, supplies, buildings or building components; nor shall it include equipment, tools or implements used to service or maintain manufacturing machinery or equipment.

When we are presented with a question of whether a particular set of facts fits within the perimeters of a statutory concept, we are generally examining a mixed question of fact and law. *Pabst Brewing Co. v. City of Milwaukee,* 125 Wis. 2d 437, 444, 373 N.W.2d 680, 684 (Ct. App. 1985). An appellate court must separate the factual findings of the trial court from conclusions of law and apply the appropriate standard of review to each. *Badger State Agri-Credit & Realty, Inc. v. Lubahn,* 122 Wis. 2d 718, 723, 365 N.W.2d 616, 619 (Ct. App. 1985). Factual findings by a trial court will not be overturned unless they are clearly erroneous. Sec. 805.17(2), Stats. However, when reviewing questions of law, this court need not give deference to the trial court's conclusions. *Maier v. Kalwitz,* 134 Wis. 2d 207, 209, 397 N.W.2d 119, 119–20 (Ct. App. 1986).

The trial court found that the shell was "an integral part of the manufacturing process." The city and the department contend that the shell is not machinery or equipment but a building and is, therefore, subject to taxation. The batch plant shell is analogous to structures claimed exempt in *Ladish Malting Co. v. Department of Revenue,* 98 Wis. 2d 496, 297 N.W.2d 56 (Ct. App. 1980). In *Ladish,* the disputed

items were attemperators, kilns and malt elevators. The structures all had the external appearance of buildings but were designed to function as machinery. The court applied the function or use test where the central question is "whether the structure is one 'whose utility is principally and primarily a significantly contributive factor in the actual manufacture or production of the product itself.'" *Id.* at 506, 297 N.W.2d at 60 (quoting 5 Mertens, *Law of Federal Income Taxation* § 32A.14, at 50 [rev. ed. 1980]). The batch plant shell, like the structures in *Ladish,* may have the appearance of a building but, as the trial court found, it is an integral part of the manufacturing process; therefore, it is tax-exempt.

The trial court also found that the silos were an integral part of the manufacturing process. Leo Geis testified that he considers the silos to be used 50% for storage and 50% for manufacturing. The city and the department contend that this 50% "nonmanufacturing" use does not qualify as an incidental use and thereby violates the exclusivity requirement of sec. 70.11(27), Stats. The city and the department dismiss the fact that the silos are also necessary to preserve the integrity of the sand and gravel (i.e., to prevent the sand from being contaminated with mud or other impurities and to prevent the "fines" from blowing away). The storage purpose is vital to the manufacturing process, making the silos an integral part of the manufacturing process and therefore tax-exempt.

The trial court found that the control room was "exclusively and directly used in the manufacture of concrete," while the city and department claim the converse is true. When examining whether property is

directly used in manufacturing, the proper test is the "integrated plant test" set forth in *Manitowoc Co. v. City of Sturgeon Bay,* 122 Wis. 2d 406, 362 N.W.2d 432 (Ct. App. 1984). The court stated:

> We reject the department's "physical change" test in favor of an "integrated plant" test for classifying property directly used in manufacturing. Under the integrated plant test, machinery that is integrated into a synchronized system of manufacturing is used directly in manufacturing whether or not it actually causes a physical change in raw materials.

*Id.* at 417, 362 N.W.2d at 438. The computer regulates the amounts of sand, water, gravel and cement used for each batch.[2] The control room is, under the test of *Manitowoc Co.,* synchronized into the manufacturing process at Ready Mix.

■

With respect to the lavatory, while the facilities are a convenience, indeed a necessary convenience where workers are present for an eight-hour day, to say that the lavatory is "absolutely necessary for the proper functioning of the whole process at the batch plant" is clearly erroneous. The lavatory is simply not essential or even incidental or collateral to the manufacturing process at the batch plant in this case. Having concluded that the finding of fact that the lavatory was absolutely necessary is clearly errone-

[2]The computer, relying on probes in the silos, measures the water content of the sand and compensates accordingly. Since wet sand weighs more, the computer is able to adjust not only the amount of water but also the amount of sand necessary to fill the specifications for a given project.

ous, the legal conclusion of the trial court that follows, tax-exempt status, must also fall.[3]

Costs are denied to both parties.

*By the Court.*—Judgment affirmed in part; reversed in part.

---

[3]On appeal, Ready Mix contends that the doctrine of *res judicata* bars the city from relitigating the issues at hand. A respondent may raise an issue in its brief without filing a cross-appeal only if the alleged error, if corrected, would sustain the judgment. *Auric v. Continental Casualty Co.,* 111 Wis. 2d 507, 516, 331 N.W.2d 325, 330 (1983). That is not the case here since we are reversing in part.