SMALL, J.T.C.
Plaintiff, D.P.S. Acquisition Corp., trading as Dependable Power Sweeping (“DPS”), challenges an assessment made by defendant, Director of Taxation (“Director”), under the New Jersey Sales and Use Tax Act. N.J.S.A. 54:32B-1 to -29. The amount of the assessment is not in dispute. The matter is submitted on stipulated facts pursuant to R. 8:8-1(b). The sole issue before this court is whether the services provided by DPS are exempt from sales tax as “garbage removal” pursuant to N.J.S.A. 54:32B-3(b)(4).
The Division of Taxation, following an audit and notice of assessment, made a final determination that DPS was liable for sales and use tax totaling $22,503.15, plus penalties and interest, for the period of April 1, 1989 through December 31, 1991. The *294 basis of the determination was that the taxpayer’s services were in the nature of sweeping parking lots, and thus taxable under N.J.S.A. 54:32B-3(b)(4). DPS appealed the determination by timely filing a complaint with the Tax Court, asserting that it was in the service of garbage removal and thus exempt from sales and use tax under the statute.
The stipulation of facts consists of six numbered paragraphs and a footnote. Rather than paraphrase the carefully negotiated agreement of the parties, the entire “Joint Statement of Facts” is quoted in full as the court’s finding of facts.
During the taxable period 1989-1991, plaintiff was in the business of performing the following operations:
1. Plaintiff owned a self-propelled vehicle which has an integrated section that is capable of collecting dirt and/or other articles.***
2. Plaintiff contracted to travel across parking lots in this vehicle to collect dirt and/or other articles in the path of the vehicle.
3. There is a container which holds the dirt and/or other articles in the integrated section of the vehicle that is collected as the vehicle travels across the parking lots.
4. When the container in the integrated section of the vehicle was filled, it had to be emptied by Plaintiff. Plaintiff emptied this container into one or more dumpsters, which were not the property of Plaintiff, located on Plaintiffs customers’ premises.
5. For the convenience of Plaintiff, the container in Plaintiffs vehicle was generally emptied only when it was full. Since not every parking lot Plaintiff contracted to clean generated enough dirt and/or other articles to fill the container, Plaintiff decided when to empty the container, but Plaintiff had the right to empty its container at each and every site at which it operated.
6. Plaintiff did not own, control, operate or in any other way possess or pay any fees relative to the dumpster(s) into which Plaintiff emptied the container attached to its vehicle. The dump *295 sters, which had the names of unrelated entities printed on them, were emptied by the unrelated entities into their vehicles, which carried away from the site all of the contents of the dumpsters, including the dirt and/or other articles emptied by Plaintiff from its vehicle’s container.
*** For the purpose of the Joint Statement of Facts, the term "dirt and/or other articles” is defined to include, but is not limited to, dirt, gum wrappers, cigarette butts, food wrappers and containers, remnants of discarded food stuffs, cans, bottles and the like.
I.
N.J.S.A. 54:32B-3 provides for the imposition of a tax of 6% upon
(b) The receipts from every sale, except for resale, of the following services:
(4) Maintaining, servicing or repairing real property, other than a residential heating system unit serving not more than three families living independently of each other and doing their cooking on the premises, whether the services are performed in or outside of a building, as distinguished from adding to or improving such real property by a capital improvement, but excluding services rendered by an individual who is not in a regular trade or business offering his services to the public, and excluding garbage removal and sewer services performed on a regular contractual basis for a term not less than SO days.
[N.J.S.A. 54:32B-3(b)(4) (emphasis added).]
Thus, the pattern of the statute is to impose a tax on outside maintenance services except for, among other services, garbage removal.
The Director’s implementing regulation, N.J.A.C. 18:24-13.2, provides as follows:
(b) Removal includes only the operation of picking up and physically removing contained waste from the premises and does not include activities related to maintaining or servicing property or any processing of the waste product. Removal would, there *296 fore, not include sweeping parking lots, snow removal and construction site clean-up, or a process such as septic tank cleaning.
(c) Examples of trash removal service would include circumstances where:
1. A private company removes trash from baskets located in a building and collects the trash in larger receptacles for removal from the premises; or
2. A private company picks up garbage at a house; or
3. A private company picks up industrial sawdust at a plant.
Plaintiff characterizes its activities as vacuuming parking lots. It collects the detritus gathered from the parking lot in the self-propelled vacuum cleaners which are periodically emptied into dumpsters either at the location of the cleaned parking lot or at a dumpster at another customer’s lot. Plaintiff has nothing to do with the maintenance or servicing of the dumpsters. The Director and the plaintiff agree that the service of emptying the dumpsters is non-taxable garbage removal.
Plaintiff argues that (a) its services meet the definition of garbage removal found in the regulation (distinguishing vacuuming from sweeping and emphasizing its removal of waste contained in the self-propelled vehicle), or (b) in the alternative, those services are part of an integrated operation of trash removal from parking lot to dumpster to garbage truck. Director counters that his regulation excluding “sweeping parking lots” from the definition of garbage removal, which has its origins in a 1982 article in State Tax News, specifically precludes the garbage removal exception from applying to plaintiffs activities. Although Director conceded at oral argument that fully-integrated services where a single contractor vacuumed the parking lots and maintained and emptied the dumpsters might not be subject to sales tax, that is not the case before the court. Director argues that the separation of the parking lot sweeping/vacuuming activities from the dumpster-emptying activities precludes plaintiff from enjoying the garbage removal exemption from taxation.
II.
Plaintiff makes two separate arguments in support of its claim that its services fall within the sales and use tax exemption *297 provided by N.J.S.A. 54:32B-3(b)(4). First, DPS asserts that it is in the garbage removal business because it removes the dirt and other articles from the parking lots of its customers to dumpsters located on the customers’ premises. DPS reads the regulations as only requiring that the garbage be collected and disposed, but not necessarily transported away from the premises of the customers.
In support of its interpretation, plaintiff points to N.J.A.C. 18:24-13.2(b) which distinguishes between garbage removal and parking lot sweeping in defining exempt services. According to plaintiff, its vehicles “remove” the dirt and other articles from the premises by collecting the refuse in the vehicles’ containers and disposing it into on-site dumpsters, as opposed to merely moving or “sweeping” the refuse to one side or area of the parking lots where the refuse would remain.
Director contends that the statute envisions removal of the garbage from the premises to another site, not merely removal from the surface of the premises. Director claims that this is a reasonable interpretation of the statute given the reference in the regulations to removal “from the.premises.”
Director cites his explanation of exempt services in 1982 as supporting the notion that the statute differentiates between removal from the premises and on-site maintenance:
Sales Tax-Snow Plowing and Cleaning of Parking Lots — The services of snow plowing either on a “one time” basis or a contractual basis, is subject to sales tax on the total charges whether compiled on an hourly basis, a machine use basis or a man-hours basis. The service is considered the maintenance of real property. The cleaning, sweeping and the rubbish removal business performed on parking lots is also considered in the exact same category and subject to sales tax.
[11 State Tax News 1, 3 (Jan./Feb. 1982).]
Director claims that the 1993 amendments to the regulations, cited above, were meant to reflect this construction.[1]
*298 Director also notes that the regulations refer to the removal of “contained waste” as a means of distinguishing between the collection of uneontained dirt and other articles from the surface of the premises, and garbage in bulk as might be found in a dumpster or garbage can. N.J.A.C. 18:24-13.2(b). Director contends that plaintiffs vehicles cannot be said to convert uncontained waste into contained waste, and that this is contradictory to the statute and regulations.
It is well settled that statutory exemptions from tax are to be narrowly construed and require strict construction. Metpath, Inc. v. Director, Div. of Taxation, 96 N.J. 147, 474 A.2d 1065 (1984); MacMillan v. Director, Div. of Taxation, 180 N.J.Super. 175, 434 A.2d 620 (App.Div.1981), aff'd o.b., 89 N.J. 216, 445 A.2d 397 (1982); Phelps Dodge Indus. v. Director, Div. of Taxation, 8 N.J.Tax 354 (Tax 1986). Although strict construction does not require a strained or begrudging construction, it does prevent an interpretation which extends beyond an ascertainable legislative standard. Millington Quarry, Inc. v. Director, Div. of Taxation, 5 N.J.Tax 144, 148 (Tax 1983) (citations omitted). The burden is on the taxpayer to show its entitlement to the exemption.
The interpretation of the Director is presumptively correct. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 384 A.2d 795 (1978). Courts should look to the plain meaning of a statute to derive its meaning. Town of Morristown v. *299 Woman’s Club of Morristown, 124 N.J. 605, 592 A.2d 216 (1991). A careful reading of the statute, coupled with the Director’s consistent interpretation since the 1982 State Tax News article embodied in his adoption of the 1993 regulation, simply will not permit the strained interpretation sought by the plaintiff in this case.
It is clear from reading N.J.S.A. 54:32B-3(b)(4) that the Legislature sought to include indoor and outdoor maintenance services within the sales and use tax, and to only exclude the unique service of garbage removal. The Director has made it clear, at least since 1982, that the Division of Taxation regarded the maintenance of parking lots as a taxable service not within the garbage removal exemption. To help clarify the difference between garbage removal and parking lot sweeping, the Director defined garbage removal to include only the removal of “contained waste.”
DPS is not in the business of garbage removal. The dirt and other articles collected by DPS is loose and uncontained on the premises of the customers when DPS employees and vehicles arrive to perform their services. DPS maintains the parking lots by collecting the uncontained refuse and depositing it into its vehicles, and later into the on-site dumpsters. Whether the plaintiffs services are described as sweeping, vacuuming, or collecting, the fact remains that the dirt and other articles deposited into the plaintiffs vehicles do not leave the premises of its customers, but are left in on-site dumpsters not owned or operated by the plaintiff. It is evident that DPS is in the business of maintaining parking lots, and leaves the business of garbage removal to the unrelated entities who own the dumpsters in which DPS ultimately deposits its collected dirt and other articles. This is consistent with the fact that DPS has never charged its customers for garbage removal, but only for parking lot sweeping services. All of DPS’ solicitations, advertisements and contracts describe parking lot sweeping that was conducted on a periodic basis (e.g., seven times per week, once a month). No documents, contracts, or invoices mentioned “garbage removal.”
*300 It might be suggested that because plaintiff does occasionally, at its sole discretion, transport the dirt and other articles collected from its customers’ premises (and now contained in its vehicles) and deposit the refuse in on-site dumpsters of other customers, plaintiff may be deemed to provide garbage removal services. It is questionable whether N.J.S.A. 54:32B-3(b)(4) intended garbage removal to include transfers from the premises to any other site, or whether it intended that the garbage only be transported to an authorized waste facility. In any case, plaintiff’s predominant services were parking lot maintenance, not garbage removal. Plaintiff spent the overwhelming majority of its time and work providing parking lot maintenance, and only charged its clients for that work. The Appellate Division in KSS Transp. Corp. v. Director, Div. of Taxation, 11 N.J.Tax 89, 94 (App.Div.1989), aff'g 9 N.J.Tax 273 (Tax 1987), approved the use of the predominant use test with regard to exemptions under the sales and use tax. Thus, if the predominant use to which an item is put, or the predominant service performed, is not exempt from taxation, an incidental exempt use or service will not serve to exempt from taxation the entire activity or purchase. In this case, the predominant service rendered by DPS is parking lot sweeping. To the extent that there is any garbage removal, it is only incidental to DPS’ predominant service of sweeping.
Plaintiffs second argument in support of its claim of the exemption from sales and use tax is that its services are part and parcel of an integrated system of garbage removal. Plaintiff asserts that it provides the first part of that system of garbage removal by collecting the dirt and other articles and placing it into dumpsters that are eventually emptied and its contents removed and brought to a waste facility by other parties.
In support of its claim that this integrated system can be applied to sales and use tax exemption issues, plaintiff refers the court to Millington Quarry, supra, 5 N.J.Tax 144. In that case, the taxpayer sought a manufacturing equipment exemption (under N.J.S.A. 54:32B-8(m)(1), since repealed and re-enacted as N.J.S.A. 54:32B-8.13(a)) from the sales and use tax for the pur *301 chase and use of various loaders and trucks used in the process of on-site blasting, crushing, and refining of rocks for sale to customers. The court found that the process of refining the rocks began when the loaders and trucks carried the rocks from the quarry to the crusher, rather than when the rocks were actually crushed as the Division contended. Accordingly, “as the quarry operation was an integrated process by which stone was removed from the quarry face and was ultimately processed to various blends of crushed stone, the trucks were directly used in the process and were tax exempt.” Id. at 153.
Plaintiff also makes reference to two non-New Jersey cases which support the application of an integrated system to sales and use tax exemptions. Plaintiff first cites Geis v. City of Fond du Lac, 140 Wis.2d 205, 409 N.W.2d 148 (App.1987), a manufacturing-related tax exemption case, in which the court stated that “[u]nder the integrated plant test, machinery that is integrated into a synchronized system of manufacturing is used directly in manufacturing whether or not it actually causes a physical change in raw material.” Id. 409 N.W.2d at 151. Plaintiff then cites Niagara Mohawk Power Corp. v. Wanamaker, 286 A.D. 446, 144 N.Y.S.2d 458 (1955) aff'd, 2 N.Y.2d 764, 157 N.Y.S.2d 972, 139 N.E.2A 150 (1956), another manufacturing-related exemption case, in which the court stated that “[t]he important thing is that all parts of the plant contribute, continuously and vitally, to production, and they are all integrated and harmonized.” Id. 144 N.Y.S.2d at 462.
Plaintiff next turns to the regulations under N.J.S.A. 54:32B-3(b)(4) to find support for the notion of an integrated system under this particular sales and use tax exemption. Plaintiff points to N.J.A.C. 18:24-13.2(c), Ex. 1 which gives an example of garbage removal qualifying for the exemption: “A private company removes trash from baskets located in the building and collects the trash in larger receptacles for removal from the premises.” Plaintiffs contention is that the example never states that the private company removing trash from the buildings and collecting it into larger receptacles must be the same one that removes the trash from the premises.
*302 The Director distinguishes Millington Quarry from the present matter. The Director notes that Millington Quarry involved the manufacturing machinery exemption to the sales and use tax, and thus that case cannot control this one. Additionally, the Director points out that the taxpayer in Millington Quarry controlled all of the means of operation at the quarry site, whereas DPS has no control over the disposal of the refuse once it is placed into the dumpsters following its collection of dirt and other articles, and thus DPS is not part of an integrated system.
The issue of whether the integrated system argument may be applied to a sales and use tax exemption (other than the manufacturing exemption approved in Millington Quarry) such as the one in N.J.S.A. 54:32B-3(b)(4) need not be decided because DPS was not involved in any such integrated process. Unlike the taxpayers in the cited cases to which the plaintiff refers, DPS had no relationship with any entity responsible for removing the trash from the dumpsters on the premises of DPS’s customers. DPS had no contract with those entities, and DPS did not schedule the collection nor disposal of the dirt and other articles from its customers’ premises with the removal of the dumpster contents by the unrelated entities. DPS’ president conceded in his deposition that there was no schedule for disposing of the collected dirt or other articles, and that DPS dumped as warranted. There was no synchronization nor harmonization of DPS work and that of the garbage removal companies as DPS did not “own, control, operate or in any other way possess ... the dumpster(s) ...”
In short, even if the integrated system operation theory might be extended beyond its application to manufacturing exemptions, the independent contracting by DPS with its customers for parking lot sweeping and the separate dumpster services provided by other contractors does not justify it in this case.
III.
The sales and use tax exemption under N.J.S.A. 54:32B-3(b)(4) for garbage removal does not apply to the plaintiff in this matter. *303 The plaintiff is liable for the sales and use tax for the services rendered during the taxable period.
The Director’s assessment is affirmed. The court will enter an appropriate judgment.

 Prior to its amendment in 1993, the Director’s 1966 regulation read as follows:
REGULATION NO. 4 — TRASH REMOVAL SERVICE — Trash removal service, when performed on a regular contractual basis for a term of not less than 30 days, is not subject to tax.
*298 Trash includes garbage or rubbish. Removal includes only the operation of picking up and physically removing the waste from the premises and does not include any processing of the waste product. Removal would, therefore, not include a process such as septic tank cleaning.
Examples of trash removal service would include circumstances where:
1. A private company removes trash from baskets located in a building and collects the trash in larger receptacles for removal from the premises.
2. A private company picks up garbage at a house.
3. A private company picks up industrial sawdust at a plant.
The parties do not dispute that N.J.A.C. 18:24-13.2, as amended in 1993, retroactively applies to the period at issue in this matter. This regulation is consistent with both the 1966 regulation and the Director's interpretation in the 1982 State Tax News article.