# IN THE SUPREME COURT OF IOWA

No. 19–0674

Submitted March 23, 2021—Filed April 30, 2021

**STATELINE COOPERATIVE,**

    Appellant,

vs.

**IOWA PROPERTY ASSESSMENT APPEAL BOARD** and **EMMET COUNTY BOARD OF REVIEW,**

    Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Emmet County, Don E. Courtney, Senior Judge.

The property assessment appeal board and a county board of review seek further review of a court of appeals decision that a feed manufacturer was entitled to property tax exemptions that the county and the board had denied. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Brant D. Kahler (argued), Adam C. Van Dike, and Steven C. Schoenebaum (until withdrawal) of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellant.

M. Brett Ryan (argued) of Watson & Ryan, PLC, Council Bluffs, for appellee Emmett County Board of Review.

Bradley O. Hopkins (argued) and Jessica Braunschweig-Norris, Des Moines, for appellee Iowa Property Assessment Appeal Board.

**MANSFIELD, Justice.**

This tax case requires us to decide when bins for holding ingredients qualify for a tax exemption as "[m]achinery used in manufacturing establishments." Iowa Code § 427A.1(1)(*e*) (2014). The Property Assessment Appeal Board (PAAB) concluded that bins that primarily hold raw material until it is needed in the manufacturing process do not themselves constitute "machinery." The district court declined to disturb the PAAB's ruling. However, the court of appeals disagreed. It found that bins which are integrated into the manufacturing process and used for temporary storage of ingredients fall within the statutory exemption. Accordingly, the court of appeals found that the appellant was entitled to an additional property tax exemption of $945,500.25.

On further review, we are not entirely persuaded by either the PAAB's or the court of appeals' approach. We conclude that customized overhead bins within a building where feed is manufactured constitute, essentially, part of a continuous piece of machinery within that building. However, we conclude that two large stand-alone corn silos, although connected to the feed manufacturing facility by an underground conveyor, do not meet the ordinary definition of machinery. So we determine that some, but not all, of the ingredient bins qualify for a tax exemption. We also conclude that the court of appeals erred in making its own valuation of the appellant's exemptions. Accordingly, we vacate the decision of the court of appeals, affirm in part and reverse in part the judgment of the district court, and remand this case to the district court with instructions to remand the proceeding to the PAAB. The PAAB should determine the appropriate amount of the exemption for the ingredient bins located in the feed manufacturing building.

**I. Facts and Procedural History.**

**A. The Feed Mill.** StateLine Cooperative owns an industrial feed mill located in Emmet County. It was constructed between 2012 and 2013 and consists of seven structures, including a feed mill building, warehouses, two corn storage bins, and a Quonset on a 5.5-acre site. This appeal focuses on three structures: the feed mill, the larger holding bin for corn, and the smaller holding bin for corn. The larger corn storage bin— really a separate silo building—has a capacity of 566,394 bushels and can supply sixteen to twenty days of full-scale production at the feed mill. The smaller corn storage bin—also a separate silo building—has a capacity of 147,456 bushels and can supply four to five days of full-scale production. From the outside, both silos look similar to typical corn storage facilities.

When needed for feed production, corn drops from the silos onto conveyors that take it over to a leg, or elevator, at the feed mill building. There, the corn is lifted to a holding space. The corn then goes through roller mills where it is ground and deposited into certain of the feed mill's overhead ingredient bins. Thereafter, it is mixed with other ingredients and processed into feed.

On top of and incorporated into the feed mill, there are twenty-four overhead bins holding milled corn and other components used in the manufacturing process. Above the bins is a rotating, mechanical distributor that directs ingredients as they arrive into the proper bin. When an ingredient is needed to make a batch of feed, it is released onto a scale and then combined with other ingredients in a four-ton mixer. An automated feed batching system directs how much of each ingredient is to be released from each bin depending on the feed product that is being made. Next to the ingredient bins, there are also eighteen load-out bins

that hold finished products until they are loaded into semitrucks for delivery.

**B. The Initial Property Tax Assessment.** The overall cost of the feed mill project was slightly over $10 million. Its initial assessed value for property tax purposes as of January 1, 2014, was $4,272,900. On May 1, StateLine petitioned the Emmet County Local Board of Review (County) for a modification of the assessment, arguing the assessment included machinery that was exempt from property tax. The board of review denied StateLine's petition. On June 16, StateLine appealed to the PAAB.

**C. The First PAAB Ruling.** A hearing took place before the PAAB on October 7, 2015. StateLine claimed that $3,402,200 of the $4,272,900 assessment consisted of exempt machinery. In fact, StateLine claimed that almost all of the feed mill building and the entire value of the corn storage bins were exempt. StateLine called its chief financial officer and its feed department manager, who described the operations of the feed mill and the basis for the claimed exemptions. The County called its assessor and the appraiser she had engaged to assist in assessing the feed mill. The appraiser pointed out that in the then-current version of Iowa Real Property Appraisal Manual, there is a page on appraising feed mills that includes instructions on valuing bucket conveyors, distributors, and scales, as well as a separate page on valuing grain bins. The appraiser testified that if an item was included in the manual, he had included it in the assessment.

On February 26, 2016, the PAAB issued its ruling. It noted, "[T]he mere inclusion of an item in the Manual does not conclusively determine its taxable status as real property." The PAAB quoted Iowa Administrative Code rule 701—71.1(7)(*b*)(1), which provides, "Machinery includes equipment and devices, both automated and nonautomated, which is used

in manufacturing as defined in Iowa Code section 428.20. *See Deere Manufacturing Co. v.* [*Z*]*einer*, 247 Iowa [1364], 78 N.W.2d 527 (1956)." The PAAB also quoted dictionary definitions of "machinery." Ultimately, the PAAB concluded that certain items valued at $1,014,200 should be removed from the tax assessment. These included scales, fans and dryers, bucket conveyors, drag conveyors, and insulated fat tanks located in the yard. The PAAB went on to suggest that *portions* of the feed mill building and the two corn storage bins might not belong in the assessment because they were machinery, but StateLine had failed to offer reliable evidence as to the respective value of the exempt parts. The PAAB's ruling reduced the overall assessment from $4,272,900 to $3,258,700.

**D. The Petition for Judicial Review.** On March 17, StateLine petitioned for judicial review in the Emmet County District Court. The County filed a cross-appeal on March 23, arguing the original assessment should have been sustained by the PAAB. StateLine moved to dismiss and strike the County's cross-appeal. StateLine also filed a motion to remand to present additional evidence to the PAAB on the value of the claimed exempt portions of the feed mill and the two corn storage silos. The PAAB and the County resisted both motions.

On August 9, the district court ruled on StateLine's motions. It denied the motion to dismiss and strike, reasoning that the cross-appeal was an appropriate and timely attempt to intervene. However, the district court granted StateLine's motion to remand, finding that the evidence that StateLine sought to present was material and StateLine had "good reasons" for not having presented it earlier. *See* Iowa Code § 17A.19(7).

**E. The Remand Hearing Before the PAAB.** A remand hearing took place before the PAAB on August 30, 2017. StateLine's chief financial officer and feed department manager testified again and presented

additional detail on the feed manufacturing process and the components of the feed mill building and the corn storage silos. This time, though, StateLine had retained an appraiser, Don Vaske, who testified at the hearing. Using the County's overall valuation of the feed mill building, Vaske offered an opinion that $1,092,550 of that assessed value should be allocated to the overhead bins (the ingredient bins and the load-out bins) that StateLine claimed were exempt. This calculation was based on the relative volume of space occupied by the bins in the overall structure. Vaske used this method even though he conceded there would be more electrical components in the lower part of the building. Vaske also opined that the County's assessment of the corn silos should be reduced by 75%. In Vaske's view, that 75% represented the value of the walls and roof of the bins, which StateLine claimed were exempt. Vaske thus would allow 25% to be assessed for the concrete floor and foundation of each silo, which StateLine conceded were taxable.

On March 23, 2018, the PAAB issued a ruling on remand affirming its prior assessment. It disagreed with Stateline's contentions that the overhead bins and the corn silos were exempt. The PAAB explained,

> [W]e conclude StateLine has not shown the overhead bins (ingredient and loadout) or the large/small exterior grain bin[s'] walls and roof are machinery. We do not believe any of them would commonly be understood to be machinery. Their primary purpose is to hold raw material, protecting it from the elements, until it is needed in the manufacturing process. Similarly, the large and small grain bins' primary purpose is to store raw material until it is needed in the manufacturing process.

The PAAB added that even if the various bins were exempt, StateLine had not carried its burden of reliably showing their value. When site work was taken into account, according to the PAAB, the walls and roofs of the corn storage bins only accounted for about 70%, not 75%, of the overall

assessed value. The PAAB also questioned Vaske's method of valuing the feed mill building, which treated every cubic foot of space as having the same value as every other cubic foot. The parties then returned to the district court.

**F. The District Court Order.** On March 29, 2019, the district court entered an order overruling StateLine's petition for judicial review and the County's cross-appeal. StateLine appealed, the County again cross-appealed, and we transferred the case to the court of appeals.

**G. The Court of Appeals Decision.** On November 4, 2020, the court of appeals affirmed in part and reversed in part. First, it rejected StateLine's jurisdictional challenges to the County's standing to cross-appeal, both at the district court level and at the appellate level. Second, it concluded that the corn storage silos and the overhead ingredient bins constituted tax-exempt machinery used in a manufacturing establishment. As the court of appeals put it, "The structures essentially amount to nonautomated equipment." The court added that "the ingredient bins' and grain bins' storage feature is only temporary and incidental, and their primary purpose is to serve directly in the manufacturing process." The court concluded otherwise as to the overhead load-bins because they contain finished product that is awaiting off-loading. Finally, contrary to the PAAB, the court of appeals found that StateLine had presented sufficient evidence to support a value of the claimed exemptions. As to the corn storage bins, the court adopted StateLine's methodology adjusting the multiplier from 75% to 70% as suggested by the PAAB.

The PAAB and the County applied for further review, and we granted the applications.

## II. Standard of Review.

"In reviewing an agency decision on judicial review, we will apply the standards of chapter 17A to determine if we reach the same results as the district court." *Naumann v. Iowa Prop. Assessment Appeal Bd.*, 791 N.W.2d 258, 260 (Iowa 2010). "If the agency's action was based on an erroneous interpretation of a provision of law whose interpretation has not been clearly vested in the agency, we shall reverse, modify or grant other appropriate relief from the agency action." *Id.* "We are bound by PAAB's findings of fact if they are supported by substantial evidence." *Wendling Quarries, Inc. v. Prop. Assessment Appeal Bd.*, 865 N.W.2d 635, 638 (Iowa Ct. App. 2015); *see also* Iowa Code § 441.39.

StateLine had the burden of proof before the County and the PAAB. Iowa Code §§ 441.21(3)(*b*), .37A(2)(*a*). "On petition for judicial review to the district court, the burden is on the party asserting the invalidity of the agency action, in this case the taxpayer." *Wendling Quarries*, 865 N.W.2d at 638; *see also* Iowa Code § 17A.19(8)(*a*).

We have said that tax exemptions are to be construed narrowly. *Christensen v. Iowa Dep't of Revenue*, 944 N.W.2d 895, 904 (Iowa 2020) ("We begin our analysis by noting that '[t]ax exemption statutes are construed strictly, with all doubts resolved in favor of taxation.' " (quoting *Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 424 (Iowa 2010))); *Carroll Area Child Care Ctr., Inc. v. Carroll Cnty. Bd. of Rev.*, 613 N.W.2d 252, 254 (Iowa 2000) (en banc) ("[A]ny doubt about an exemption is resolved in favor of taxation."). *But see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 362 (2012) (criticizing an approach that construes tax exemptions either broadly or narrowly and stating that "a tax statute should be given its fair meaning, and this includes a fair interpretation of any exceptions it contains").

**III. Legal Analysis.**[1]

**A. Are the Bins "[M]achinery Used in [a] Manufacturing Establishment[]" Within the Meaning of Iowa Code Section 427A.1(1)(*e*)?** Under Iowa law, "[m]achinery used in manufacturing establishments" is exempt from property taxation. Iowa Code §§ 427A.1(1)(*e*), 427B.17(3). StateLine is engaged in manufacturing as defined by the Code. *See id.* § 428.20 ("A person who purchases, receives, or holds personal property of any description for the purpose of adding to its value by a process of manufacturing, refining, purifying, *combining of different materials*, or by the packing of meats, with a view to selling the property for gain or profit, is a "*manufacturer*" for the purposes of this Title." (first emphasis added)). Yet there is no definition of "machinery" in the Code.

We previously held that the PAAB had not been vested with explicit or implicit authority to interpret Iowa Code section 441.21(1)(*d*). *Naumann*, 791 N.W.2d at 260. We think the same conclusion applies to section 427A.1(1)(*e*). The Iowa Code does not expressly confer interpretive

---

[1]A preliminary issue is whether the cross-appeals filed by the County in the district court and in this court were jurisdictionally proper. StateLine does not dispute that the County can appear as a party-intervenor to *defend* the PAAB decision. The disputed question is whether the County can seek affirmative relief from the PAAB ruling when the County did not file its own petition for judicial review within thirty days of the final agency decision. *See* Iowa Code § 17A.19(2), (3). We believe this issue has been previously resolved in the County's favor. In *Doerfer Div. of CCA v. Nicol*, we held that a party that timely intervened as authorized by Iowa Code section 17A.19(2) could obtain affirmative relief. 359 N.W.2d 428, 436–37 (Iowa 1984). We explained,

> To accept Wayne's analysis would require *all* parties adversely affected by final agency action in a contested case to file a *petition*, setting out duplicative information, within thirty days. By waiting until the thirtieth day before filing, one party could strip other parties, dissatisfied with the decision but nonetheless willing to acquiesce, of any opportunity for affirmative relief. Such a theory finds no support in our law or in sound public policy.

*Id.* at 436. In any event, at this stage of the proceedings, the County is no longer seeking affirmative relief from the PAAB's ruling.

authority on the PAAB, *Naumann*, 791 N.W.2d at 260, and machinery is not "a substantive term within the special expertise of the [PAAB]." *Renda v. Iowa C.R. Comm'n*, 784 N.W.2d 8, 14 (Iowa 2010); *see also Wendling Quarries*, 865 N.W.2d at 638 (reviewing de novo the PAAB's interpretation of sections 427A.1(1)(*c*) and subsection (*d*)).  Thus, we do not defer to the PAAB's statutory interpretation.

The department of revenue (DOR) regulations on assessment practices provide,

> Machinery includes equipment and devices, both automated and nonautomated, which is used in manufacturing as defined in Iowa Code section 428.20.  *See Deere Manufacturing Co. v. [Z]einer*, 247 Iowa [1364], 78 N.W.2d 527 (1956).

Iowa Admin. Code § 701—71.1(7)(*b*)(1).  Notably, the general assembly has required the director of revenue to "promulgate rules subject to chapter 17A to carry out the intent of [section 427A.1]."  Iowa Code § 427A.1(9).  This directive goes beyond mere rulemaking authority, but appears to grant authority to the DOR to interpret—i.e., "carry out the intent of"— section 427A.1.  *See Renda*, 784 N.W.2d at 12–13.  Thus, we give deference to the DOR's view that machinery does not have to be automated.  *See* Iowa Code § 17A.19(11)(*c*).

Our caselaw in this area is somewhat limited.  In *Griffin Pipe Products Co. v. Board of Review of County of Pottawattamie*, we emphasized that "all machinery, attached or unattached, fixtures or moveable items, falls within the scope of [Iowa Code section 427A.1(1)(*e*)]."  789 N.W.2d 769, 775 (Iowa 2010).  Thus, we held that a foundry was entitled to a property tax exemption for a three-floor cupola used to melt metals, a vertical annealing furnace, and an exhaust smokestack.  *Id.* at 770.

In *Rose Acre Farms, Inc. v. Board of Review of Madison County*, we concluded that chicken cages, a feeding and watering system, a manure removal system, and bulk bins all constituted "equipment" or "machinery" within the meaning of Iowa Code section 427A.1(1)(*d*). 479 N.W.2d 260, 261–63 (Iowa 1991). All of these items were "brought in and put together much like an erector set." *Id.* at 261. They could be "removed by reversing the installation process, again using the erector set analogy." *Id.*[2]

Other states have discerned a difference between "machinery" and "storage." Thus, Pennsylvania has a number of precedents analyzing whether tanks and other containers used in an industrial operation are taxable or not. Pennsylvania law, somewhat similar to Iowa law, exempts "machinery, tools, appliances and other equipment contained in any mill, mine, manufactory or industrial establishment." 53 Pa. Cons. Stat. § 8811 (2021). The critical distinction in the cases is whether the container was essentially used for storage. In *In re Borough of Aliquippa*, the Pennsylvania Supreme Court offered the following thumbnail of the exemption:

> [U]nder the statute involved, improvements, whether fast or loose, which are used directly in manufacturing the products that the establishment is intended to produce and are necessary and integral parts of the manufacturing process and are used solely for effectuating that purpose, are excluded from real estate assessment and taxation. On the other hand, improvements which benefit the land generally and which may serve various users of the land, are not in this category. Neither are structures, which are not necessary and integral parts of the manufacturing process and which are separate and apart therefrom within the exclusion. A structure used for storage, for example, is part of the realty and subject to real estate taxation.

175 A.2d 856, 861–62 (Pa. 1961).

---

[2]The egg farm also had "a complete modern feed mill with storage." *Rose Acre Farms*, 479 N.W.2d at 261.

Hence, in *United States Steel Corp. v. Board of Assessment & Revision of Taxes of Bucks County*, the Pennsylvania Supreme Court classified as tax exempt ore-yard facilities that not only provided a three to ten days' supply of ore for the blast furnaces but also were

> used fundamentally and primarily for the programmed spreading, layering and blending of the nonuniform shipments of grades and sizes of ore received in various cargoes, so as to achieve uniformity for processing in respect to chemical analysis and physical characteristics.

223 A.2d 92, 95–96 (Pa. 1966) (per curiam). As the court explained, any "temporary storage" use was "minimal and purely incidental to their use as necessary and integral parts of the process of manufacturing steel." *Id.* at 96. That court also found that stock bins underneath a railway trestle that "serve[d] directly as a material-handling facility for the gathering, combining and mixing of raw materials in the process flow to the blast furnaces" were tax-exempt despite their "incidental, temporary or 'in-transit' storage aspect." *Id.* Additionally, in *Gulf Oil Corp. v. Delaware County Board of Assessment Appeals*, the Pennsylvania Commonwealth Court held that tanks that were used to remove water from oil that had been offloaded from ships were not taxable. 489 A.2d 321, 325 (Pa. Commw. Ct. 1985).

Yet, in *In re West Penn Power Co.*, that court held that oil tanks connected to a power plant's boilers were storage tanks and were not tax-exempt. 588 A.2d 997, 1000 (Pa. Commw. Ct. 1991). In *BFC Hardwoods, Inc. v. Board of Assessment Appeals*, the Pennsylvania Supreme Court found that drying kilns were machinery and equipment because they were "the *sine qua non* of the industrial establishment" (a lumber drying business) and "the Board offered insufficient evidence to adequately

support its contention that the kilns could be practically used for storage." 771 A.2d 759, 767 (Pa. 2001).

There are precedents from other jurisdictions as well. In *Geis v. City of Fond du Lac*, the Wisconsin Court of Appeals determined that three silos used in a concrete manufacturing plant constituted "manufacturing machinery and specific processing equipment" under Wisconsin tax law. 409 N.W.2d 148, 149–51 (Wis. Ct. App. 1987). The court noted,

> The silos used to store the sand and stone have probes and weeping holes. These silos assure a consistent mix in the gravel, prevent the "fines" (very fine sand) from blowing away and allow the moisture content of the sand to be monitored and regulated through the use of probes and weeping holes. The silos also prevent the sand from being contaminated with mud or other impurities.

*Id.* at 149. Notably, Wisconsin law defines "manufacturing machinery and specific processing equipment" to include "any combination of electrical, mechanical or chemical means, including special foundations therefor, designed to work together in the transformation of materials or substances into new articles or components." *Id.* at 150 (quoting Wis. Stat. § 70.11(27) (1987)). Accordingly, Wisconsin precedent granted an exemption to any structure that was "an integral part of the manufacturing process." *Id.* at 150–51.

On the other hand, in *Barton Enterprises, Inc. v. Ramsey County*, the Minnesota Supreme Court decided that oil tanks that were part of an interconnected network used to fabricate asphalts were not exempt from tax. 390 N.W.2d 776, 778 (Minn. 1986) (en banc). The court agreed with the tax court that "the basic function of the tanks was to contain and shelter oils—a function similar to that performed by buildings." *Id.* at 777. Minnesota law appears to offer a broader exemption than Iowa law, covering "tools, implements, machinery, and equipment attached to or

installed in real property for use in the business or production activity conducted thereon, regardless of size, weight or method of attachment." *Id.* (quoting Minn. Stat. § 272.03, subd.1(c)(i) (1984)).

In *American Crystal Sugar Co. v. Traill County Board of Commissioners*, the North Dakota Supreme Court found that conditioning silos used at a processing plant for curing sugar for a minimum of seventy-two hours were tax-exempt machinery under that state's law. 714 N.W.2d 851, 861–62 (N.D. 2006). The court explained,

> Kennedy's testimony clearly establishes that the sprinkler system, the leveling equipment, and the temperature control system contained within the structures of the conditioning silos are items used directly in and solely for effectuating the process of converting sugar beets into sugar that is marketable. We do not believe Kennedy's testimony establishes that the bin structures themselves are items used directly in and solely for effectuating the process. Although the Weibull silos are purchased as a unit, the evidence reflects that the bins themselves would not effectuate the conditioning of the sugar if it were not for the special equipment attached to the bins.

*Id.* at 861. In other words, it was important in *American Crystal* that part of the manufacturing process occurred within the bins themselves. *Id.*

Webster's defines "machinery" as "machines in general or as a functioning unit" and "the working parts of a machine." *Machinery, Merriam-Webster's Collegiate Dictionary* (10th ed. 2002). On our review, we conclude the two stand-alone corn silos are not machinery used in a manufacturing establishment. They are separate buildings. They look similar to numerous other grain storage facilities. In fact, the smaller of the two corn silos was erected in 1978 and stood for approximately thirty-five years before the feed mill came along.

No processing or manufacturing occurs at the silos themselves. Rather, the grain drops onto conveyors and is carried over to overhead

bins in the feed mill building. The two silos collectively hold twenty to twenty-five days' worth of corn for feed mill production. They should thus be viewed as storage buildings. Just as the load-out bins are the epilogue to the manufacturing process, and thus not a part of the process itself, the corn silos are the prologue. *See New England Milling Co. v. Board of Assessors of Ayer*, No. 98–P–1502, 2000 WL 1476332, at *1 (Mass. App. Ct. June 29, 2000) (upholding determination that silos in a flour mill were not machinery); *Agri Tech Indus., Inc. v. Comm'r of Rev.*, No. 8414–R, 2012 WL 6217536, at *5 (Minn. Tax Ct. Dec. 11, 2012) (concluding that a silo was a storage building rather than farm machinery even though a machine controlled the unloading of the silo).

Yet we join the court of appeals in finding that the ingredient bins at the feed mill are machinery used in a manufacturing establishment. They are part of the sequential manufacturing process at the feed mill building. They discharge directly into the scale and then the mixer. They do not appear to have any independent value as storage apart from this particular manufacturing process. Nor does the fact that they are structurally part of the building alter the situation. *See Griffin Pipe*, 789 N.W.2d at 775.

Accordingly, we affirm in part and reverse in part the district court on this issue. We conclude the corn silos are not machinery within the meaning of Iowa Code section 427A.1(1)(*e*), but the overhead ingredient bins are.

**B. Did StateLine Provide Sufficient Evidence of the Value of the Exempt Property, i.e., the Overhead Ingredient Bins?** As an alternative ground for denying StateLine's appeal, the PAAB found that StateLine had not offered reliable evidence of the value of the overhead bins and the corn silos and, therefore, was not entitled to any exemption for them. The court

of appeals decided that the PAAB had acted unreasonably, arbitrarily, and capriciously in not assigning any value to the overhead ingredient bins or the walls and roofs of the corn silos. It therefore adopted Vaske's opinions as to the value of the exemptions, although based on some language in the PAAB's remand order, it adjusted downward from 75% to 70% the allocation between walls/roof and site/foundation for the corn silos.

We need not address the hypothetical value of an exemption for the corn silos because we have concluded no exemption is warranted. Turning to the overhead ingredient bins, we agree with the court of appeals that the PAAB acted unreasonably, arbitrarily, and capriciously in attributing no value to them for exemption purposes. The County's own expert in the remand proceeding had valued the overhead bins (including the loadout bins) at $778,240. We cannot accept the PAAB's view that there is insufficient evidence to support any valuation just because "Vaske's allocations are not reliable reflections of [the bins'] value."

At the same time, we think the court of appeals erred in simply adopting Vaske's per-cubic-foot methodology and then doing its own math based on that methodology. The role of an appellate court in an administrative review proceeding is not to be primary fact-finder. While there was "sufficient evidence in the record to reach values of the claimed exemptions," the evidence on value was disputed, so the court of appeals should not have determined value itself. As we have said,

> A remand is for the purpose of allowing the agency to re-evaluate the evidence. However, a remand for agency fact-finding is unnecessary when the facts are established as a matter of law. The reviewing court can determine the facts as a matter of law when the relevant evidence is both uncontradicted and reasonable minds could not draw different inferences from the evidence.

*Armstrong v. State of Iowa Bldgs. & Grounds*, 382 N.W.2d 161, 165 (Iowa 1986) (en banc).

Assigning *no* value to the overhead ingredient bins was arbitrary, but given the conflicting evidence as to the appropriate exemption amount, this case should be returned to the PAAB. *See* Iowa Code § 17A.19(10) ("The court may affirm the agency action or remand to the agency for further proceedings."); *Des Moines Indep. Cmty. Sch. Dist. v. Dep't of Job Serv.*, 376 N.W.2d 605, 610–11 (Iowa 1985) ("If the agency ruling does not disclose a sound factual and legal basis for its decision, the [appellate] court should remand for findings of facts.").

**IV. Conclusion.**

For the foregoing reasons, we vacate the decision of the court of appeals. We affirm the district court's order except to the extent it sustained the PAAB's determination to deny an exemption for the overhead ingredient bins. We reverse and remand for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**